Paddock v. Somes.

---

PADDOCK, *Appellant*, v. SOMES.

1. **Practice :** PLEADING : WAIVER. By pleading to the merits a defendant waives everything in the petition, except that it does not state facts sufficient to constitute a cause of action, and that the court has no jurisdiction over the subject-matter of the action.

2. ——— : MOTION TO STRIKE OUT PLEADING. Under the practice act motions to strike out pleadings must be in writing, specifying the grounds upon which they are founded, and are required to be filed one day before they are heard.

3. ——— : ———. When used for the purpose of striking out a pleading or a portion thereof, a motion is governed by the rules governing demurrers.

4. ——— : UNION OF LEGAL AND EQUITABLE CAUSES OF ACTION : DAMAGES AND INJUNCTION. In an action for damages for the maintenance of a nuisance, the plaintiff may properly unite a prayer for an injunction with that for damages. ( R. S. 1889, secs. 2040, 5491.)

5. **Nuisance :** DRAINAGE OF SURFACE WATERS. One cannot collect surface water into artificial channels and cast it upon the land of his neighbor. It makes no difference that some of the water so collected consists of spring water or drainage or sewerage water. The same rule holds in this regard both as to individuals and to municipal corporations.

6. ——— : ———. It is no excuse from liability for a nuisance that it could not have been avoided without great expense, or that the injured party could have obviated the injury at slight expense.

7. ———: CONTRIBUTORY NEGLIGENCE. The law of contributory negligence has no place in an action for damages for the maintenance of a nuisance.

8. Practice: INSTRUCTIONS. An instruction should not be given where there is no evidence upon which to base it.

9. ———: JUDGMENT: COLLATERAL ATTACK: NUISANCE. A judgment establishing the existence of a nuisance cannot be attacked in a second action for its continuance, the allegations of the petitions being substantially the same in both actions; the continuance of the nuisance being admitted, the only question for determination is the *quantum* of damages to be recovered.

10. ———: NUISANCE: INJUNCTION. Where the existence of a nuisance has been established at law, courts will grant an injunction, as a matter of course, where the nuisance is of a continuous or constantly recurring character.

11. ———: ———: ———. Courts of equity will more readily interfere in such instances where the damages recovered are merely nominal, and therefore inadequate to prevent a repetition of the injury.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

REVERSED AND REMANDED.

*Kerr & Kerr* for appellant.

(1) The court erred in striking out that part of plaintiff's petition, praying for an injunction. *Henderson v. Dickson*, 50 Mo. 161; *Mulholland v. Rapp*, 50 Mo. 42; *Thompson v. District*, 71 Mo. 495; *Sappington v. Railroad*, 14 Mo. App. 86; *Hall v. Johnson*, 57 Mo. 521. (2) The court erred in refusing instructions asked by plaintiff. *Abbott v. Railroad*, 83 Mo. 271; *McCormick v. Railroad*, 57 Mo. 483; *Shane v. Railroad*, 71 Mo. 237; *Martin v. Benoist*, 20 Mo. App. 262. (3) The court erred in the instructions given of its own motion. Cases cited, *ante.* (4) The court erred in giving the instructions asked by defendant. Cases cited, *supra;* Wood's Law of Nuisances [2 Ed. 1883] pp. 1015, 500–521, 510, and authorities there cited, 506;

Cooley on Torts, ch. 19, p. 567, *et seq.; Attorney General v. Asylum*, L. R. 4 Ch. App. Cases, 142 ; *Hurdman v. Railroad*, English Ct. of App. 6 C. L. J. 367.

*W. H. Clopton* for respondent.

(1) The court did not err in sustaining respondent's motion to strike out the part of plaintiff's petition praying for an injunction, Chancery will not always restrain by injunction a "trespasser merely because he is a trespasser." *Echelkamp v. Schrader*, 45 Mo. 505 ; *Carlisle v. Stevenson*, 3 Maryland Ch. 499 ; *Herr v. Beerbower*, 3 Maryland Ch. 456 ; *Wason v. Sanborn*, 45 N. H. 169 ; *Wood v. Sutcliffe*, 2 Sim. (N. S.) 163 ; High on Inj., sec. 722 ; Hil. on Inj. [3 Ed.] sec. 47, p. 636. The amount was too contemptibly small to entitle it to recognition by a high court of chancery. *Laney v. Jasper*, 39 Ill. 46 ; *Smith v. Adams*, 6 Paige, 435 ; *Stewart v. City of Clinton*, 79 Mo. 614. (2) The court properly declared the law. The instructions for defendant were correct declarations of law. The first instruction for defendant needs no support. The second instruction is supplemented by reason and authority. *Stewart v. Clinton*, 79 Mo. 603. The third instruction for defendant is erroneous only in fixing the date of the trial, instead of the date of the institution of the first suit, as the time from which the damage, if any, began. But, as the plaintiff submitted to that period in the beginning of the trial and recognized it in all his instructions, he cannot be heard to complain now. Where a case is tried throughout on one theory, it is too late to raise the objection in the appellate court that the court failed to instruct on an entirely different theory. *Bank v. Armstrong*, 62 Mo. 59 ; *Fell v. Mining Co.*, 23 Mo. App. 224, and cases cited. The fourth instruction for defendant was proper. It declared the law as to surface water. *Abbott v. Railroad*, 83 Mo. 284 ; *Beirson v. Railroad*, 78 Mo. 204–12. The instructions given for

plaintiff, as modified by the court, properly declared the law. *Abbott v. Railroad, supra.* (3) Plaintiff bought the lot with knowledge that surface water and spring water flowed over it. *Laney v. Jasper,* 39 Ill. 46.

SHERWOOD, J.—John Paddock brought this suit against Samuel Somes for having unlawfully laid a drain pipe across North Broadway from his premises to lots belonging to plaintiff and on which he resided and for continuing to maintain the same, thus wrongfully causing and continuing the discharge of water, drainage and sewerage from defendant's premises onto lots of plaintiff. Plaintiff asked for damages and for an injunction. The plaintiff had previously recovered a verdict and judgment for a nominal sum against the defendant for a like wrong. That judgment remains unreversed.

It was admitted at the trial that the flow of water, drainage and sewerage had continued from the time of the former trial, April 21, 1886, and that defendant created and continued to maintain the nuisance. The foregoing facts were proven on the trial. The answer was a general denial.

The petition in the present action omitting formal parts is the following:

"Plaintiff states that on or about the first day of July, 1883, the defendant then being in possession of the tract of land last aforesaid did wrongfully, wilfully and maliciously excavate and lay a drain from said tract of land, then and now in possession of defendant, across said Broadway, extending the same to and upon the building lots aforesaid of plaintiff, thereby wrongfully, wilfully and maliciously diverting from its natural course the rainfall and the water falling or being on said tract of land of defendant, as well as the drainage and sewerage; and wrongfully, wilfully and maliciously caused the same to be discharged and to flow upon the building lots aforesaid of plaintiff hereinbefore described, and unlawfully, wilfully and maliciously

continued to maintain said pipe and flow of water, drainage and sewerage upon lots of plaintiff aforesaid, thereby rendering said lots unfit for building purposes, to the great damage of the plaintiff; that by reason of the premises plaintiff filed his petition in the circuit court, city of St. Louis, state of Missouri, against said defendant, asking damages therefor, in case numbered 69,772, on the twenty-second day of December, 1885; that upon hearing of said cause the court rendered a judgment finding said allegations to be true, and awarding the plaintiff damages therein.

"Plaintiff alleges and avers that ever since December 22, 1885, the said plaintiff and defendant have been, and are now, respectively, in possession of the said respective properties as aforesaid, and that said defendant has ever since said last date unlawfully, wilfully and maliciously continued to maintain said pipe and flow of water, drainage and sewerage upon the lots of plaintiff aforesaid, thereby unlawfully, wilfully and maliciously diverting from its natural course the water passing or being on said tract of land of defendant as well as the drainage and sewerage, and unlawfully, wrongfully, wilfully and maliciously causing the same to flow and be discharged upon the building lots aforesaid of plaintiff, thus continuing to render said lots unfit for building purposes to the plaintiff, to the damage of plaintiff in the sum of $5,000; that plaintiff, though often requested, has wholly neglected and refused to desist from the maintaining of said pipe and flow of water, drainage and sewerage as aforesaid on the lots of plaintiff, rendering and continuing to render said property useless to plaintiff; that plaintiff has no adequate remedy at law, and, to avoid multiplicity of suits, plaintiff asks judgment for the said sum of $5,000 and costs, and that an injunction issue from this honorable court perpetually restraining defendant from, and ordering him to cease, maintaining said pipe and flow of water, drainage and sewerage on the said premises of

plaintiff, and for such other and further relief as to this honorable court may seem meet."

The petition in the former cause, making a similar omission as before, was as follows:

"Plaintiff states that on or about the first day of July, 1883, the defendant then being in possession of the tract of land last aforesaid did wrongfully, wilfully and maliciously excavate and lay a drain from said tract of land now in possession of defendant across said Broadway, extending the same to and upon the building lots aforesaid of plaintiff, thereby wrongfully, wilfully and maliciously diverting from its natural course the rainfall and the water falling or being on said tract of land of defendant, as well as the drainage and sewerage, and wrongfully, wilfully and maliciously caused the same to be discharged and to flow on the building lots aforesaid of plaintiff hereinbefore described, and unlawfully continues to maintain said pipe and flow of water, drainage and sewerage upon lots of plaintiff thereby rendering said lots unfit for building purposes to the damages of plaintiff in the sum of $5,000. For which, with the costs, plaintiff prays judgment against the defendant."

The former and present petition are here presented in order that comparison may be instituted between them.

There was abundant testimony to sustain the allegations of the petition. At the close of the case the following instructions were presented by the plaintiff and given or refused as hereinafter stated:

"1. The court instructs the jury that by verdict and judgment in the case, the following facts are established, etc., beyond contradiction:

"That, before the filing of the petition in the suit heretofore tried, the defendant, Samuel Somes, by a drain laid across North Broadway, caused the drainage or sewerage to flow from the premises of defendant on the west side of Broadway, and unlawfully caused the

same to be discharged and to flow upon the building lots of plaintiff on the east side of North Broadway.

"2. The court instructs the jury that, if they believe from the evidence that the defendant has, since the twenty-second day of April, 1886, continued to cause or suffered the drainage or sewerage to flow from his premises through the pipe laid by defendant's premises on the west side of Broadway onto the premises of plaintiff on the east side of Broadway, they will find a verdict for the plaintiff.

" 3. The court instructs the jury, that if they find for the plaintiff they will assess such a sum as damages against the defendant, as will compensate plaintiff for any injury to his lots for building purposes, caused by the flow thereon of drainage or sewerage from defendant's lot to lots of plaintiff through the pipe laid across Broadway by defendant, from and after the trial of the former suit between plaintiff and defendant, on April 22, 1886.

"4. The court instructs the jury that if they believe from the evidence that, since the trial of the suit heretofore tried between plaintiff and defendant, defendant has wilfully and with malice continued the flow of drainage or sewerage through the pipe across North Broadway from the premises of defendant onto the lots of plaintiff, they will, in addition to any damage they may assess for the injury, if any, to the lots of Paddock, for their use, for building purposes, assess and find in their verdict punitive and exemplary damages.

" 5. By punitive damages in these instructions is meant damages in such sum as would be a punishment for an unlawful and malicious act, tending to deter the person against whom such damages might be assessed from a continuation of the unlawful act.

" 6. By exemplary damages is meant damages in such a sum as would, by making an example of one committing an unlawful act wilfully, with malice, be a warning to others.

"7.   By malice is meant an unlawful act without legal justification or excuse.   The word, wilfully, means intentionally."

The court gave those marked 1, 5 and 6, and refused to give, as asked, 2, 3, 4 and 7.

Defendant's instructions given:

"1.   The court instructs the jury that defendant is not liable to plaintiff in this action for any damages the plaintiff may have suffered from spring water siping through the ground in front of, or near, defendant's house, and which may have flowed or percolated through the pipe or under Broadway onto to the lot of plaintiff.

"2.   The court instructs the jury that, even if they believe from the evidence that plaintiff sustained damages since the twenty-second day of December, 1885, by reason of the flow of water through the drain-pipe described in the petition, yet if they further believe that plaintiff could have prevented the injury, by a reasonable exertion and at trifling expense, plaintiff is not entitled to recover.

"3.   The court instructs the jury that if they find from the evidence that the defendant has not been guilty of malice towards plaintiff in permitting the sewerage water to flow through the pipe described in the petition, then if they find from the evidence that plaintiff has been damaged by the flow of sewerage from defendant's property onto that of plaintiff, they are instructed that they cannot consider, in estimating such damages to plaintiff, any damages, whether permanent or otherwise, caused by the flow of any sort of water through said pipe prior to the trial of the suit by plaintiff against defendant, instituted December 22, 1885.

"4.   The court instructs the jury that plaintiff is not entitled to recover of defendant for any damages to plaintiff's land caused by the flow of surface water, even though they may believe from the evidence that defendant diverted the surface water from his own premises onto those of plaintiff; that surface water, in

law, is the accumulation of rainfalls or water from melting snow, whether on the surface of the ground as such, or such as may have penetrated into the ground and percolating through the ground."

The following instructions were given by the court of its own motion:

"2. The court instructs the jury that if they believe from the evidence that the defendant has, since the twenty-second day of April, 1886, continued to cause or suffered the drainage or sewerage, other than surface water, to flow from his premises through the pipe laid by defendant from defendant's premises, on the west side of North Broadway, they will find a verdict for the plaintiff.

"3. The court instructs the jury that, if they find for the plaintiff, they will assess such a sum as damages against the defendant as will compensate plaintiff for any injury to his lots for building purposes caused by the flow thereon of drainage or sewerage other than surface water from defendant's lot to lots of plaintiff, through the pipe laid across Broadway by defendant, from and after the trial of the former suit between plaintiff and defendant, on April 22, 1886.

"4. The court instructs the jury that, if they believe from the evidence that, since the trial of the suit heretofore tried between plaintiff and defendant, defendant has wilfully and with malice continued the flow of drainage or sewerage, other than surface water, through the pipe across North Broadway, from the premises of defendant onto the lots of plaintiff, they will, in addition to any damages they may assess for the injury, if any, to the lots of Paddock for their use for building purposes, assess and find in their verdict punitive and exemplary damages."

"7. By malice is meant an unlawful act, intentionally committed, without legal justification or excuse. The word, wilfully, means intentionally."

The verdict and judgment were for the defendant.

I.   The action of the trial court was wholly unwarranted in striking out on the oral motion of defendant that portion of the petition which prayed for an injunction.

The defendant had waived any irregularity or informality in the petition, or of its union of two causes of action in one count, by pleading to the merits. This has been determined so often in this court that the repetition of this statutory rule would seem to be but a work of supererogation.   If a defendant pleads to the merits, he waives everything in the petition but two points:   *First.*   That the petition does not state facts sufficient to constitute a cause of action ; *second*, that the court has no jurisdiction over the subject-matter of the action.   *Elfrank v. Seiler*, 54 Mo. 134 ; *Pomeroy v. Benton*, 57 Mo. 531 ; *Thompson v. School Dist.*, 71 Mo. 495 ; *Young Men, etc., v. Dubach*, 82 Mo. 475 ; *Grove v. City of Kansas*, 75 Mo. 672 ; *Jones v. Steele*, 36 Mo. 324 ; R. S. 1889, sec. 2047.

II.   But the action of the trial court was erroneous for these additional reasons :   Under our practice act, motions to strike out a pleading must be *in writing*, specifying the grounds upon which they are founded; and are required to be *filed* one day before being heard. R. S. 1889, secs. 2085, 2086, 2208, 2056, 2057, 2061, 2070, 2067.   When used for the purpose of striking out a pleading, or a portion thereof, a motion is governed by the rules governing demurrers.   *Howell v. Stewart*, 54 Mo. 400 ; *Cashman v. Anderson*, 26 Mo. 67 ; *Sapington v. Jeffries*, 15 Mo. 628 ; *Paxon v. Talmage*, 87 Mo. 13. For such an occasion it is just as necessary that a motion should be *in writing* as that a demurrer should be.

In certain circumstances our statute allows different causes of action, whether legal or equitable, to be united in the same petition, provided they be separately stated.

A prayer for equitable relief can hardly be *called a cause of action;* but, if it could be so termed, it was

competent under the statute, section 2040, and frequent rulings of this court to unite in the same petition legal and equitable causes of action, when connected with the same subject of action. *Blair v. Railroad*, 89 Mo. 383; *Woodsworth v. Tanner*, 94 Mo. 124; *Henderson v. Dickey*, 50 Mo. 161.

Besides our statute authorizes an injunction to issue in aid of a civil action, when the "relief or any part thereof consists in restraining the commission or continuance of some act of the defendant, the commission or continuance of which during the litigation would produce injury to the plaintiff," etc. R. S. 1889, sec. 5491.

In *Ware v. Johnson*, 55 Mo. 500, it was strongly intimated that under the above section a plaintiff could properly unite in his petition, in an action of trespass, a prayer for an injunction. In his work on code pleading, Judge BLISS does not regard a prayer for equitable relief, though united in the same count with a legal ground of action, as necessarily constituting a separate and distinct cause of action. He says: "In most of these cases the double relief is improperly spoken of as a union of two causes of action, although it does not appear that they were separately stated as is required in the case of such union." "Under the code there is but one count and one form of action, and, by a single complaint, the aggrieved party may have all the relief to which he is entitled. In seeking what is still called legal and equitable relief, he does not unite different causes of action, for there is but one ; he only seeks the twofold relief for the one wrong; therefore, there can be no union of causes of action by separate statements." Code Plead. [2 Ed.] secs. 166, 167, 168, 169, 170, 171. This appears to be the correct view, and one in entire harmony with the spirit of the code. In no point of view, therefore, can the action of the lower court be upheld.

III.   Blackstone defines a nuisance as "anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." 3 Black Com. 215.

In commenting on this definition, Judge Cooley says: "An actionable nuisance may, therefore, be said to be anything wrongfully done or permitted, which injures or annoys another in the enjoyment of his legal rights." Cooley on Torts [2 Ed.] 670.

"The right of one to be secure against the undermining of his buildings by water, or the destruction of his crops, or the poisoning of the air by the stealthy attacks of an unseen element, is as complete as his right to be protected against open personal assaults or the more demonstrative, but not more destructive, trespasses of animals." Cooley on Torts [2 Ed.] 675.

And of course it is an actionable injury and nuisance for one to collect surface waters and cast them in a body upon a neighboring proprietor; and the same rule holds in this regard both to individuals and to municipal corporations; the latter though not obliged to construct sewers or drains to protect adjoining owners against the flow of surface water from public ways, yet if they do construct drains and thus carry water and cast water upon the adjacent lands they are as much responsible as though they had invaded such lands by sending their servants thereon. Cooley on Torts [2 Ed.] 688.

In such an instance the nuisance, if continued, becomes a fresh nuisance every day, and authorizes new suits accordingly. Cooley on Torts [2 Ed.] 738; *Van Hoozier v. Railroad,* 70 Mo. 145; *Dickson v. Railroad,* 71 Mo. 575.

"The test of nuisance is not injury and damage simply, but *injury and damages resulting from the violation of a legal right of another.* If there is no right violated, there is no nuisance, however much of injury and damage may ensue, but, if a right *is* violated,

there is an actionable nuisance even though no actual damage results therefrom." Wood's Law of Nuisances [ 2 Ed. ] 1015, and cas. cit.

In the quite recent case of *Rychlicki v. City of St. Louis*, 98 Mo. 497, the subject of the right of a city to collect surface water into a drain and gutters was freely admitted; but it was ruled in conformity to all the authorities, many of which are there cited, some from our own reports, that the city, having thus lawfully collected such water into drains and gutters, could not without incurring liability and responding in damages, precipitate the collected water upon adjacent lands. As already observed the same rule applies to individuals as to cities in this regard.

Sufficient has been said to condemn as erroneous all of the instructions whether given by the court in behalf of the defendant, or of its own motion, which gave recognition to the defendant to collect surface water into artificial channels, and then cast it upon the land of his neighbor. There is no law for any such assertion. And it makes no difference in point of principle that some of the water thus collected in such channels consisted of spring water or drainage or sewerage water, since the liability consists in collecting water from *whatever source* collected, and then casting it upon the lands of another.

IV. Nor was defendant exonerated from liability for his acts, nor plaintiff debarred of recovery by reason of the fact, if it were a fact, that the latter could have prevented the injury "by *a reasonable exertion and a trifling expense.*"

On this point, Mr. Wood says: "Neither does it make any difference or in any measure operate as an excuse that the nuisance cannot be obviated without great expense, or that the plaintiff himself could obviate the injury at a trifling expense. It is the duty of every person or public body to prevent a nuisance, and

the fact that the person injured could, but does not, prevent damages to his property therefrom is no defense either to an action at law or in equity.   A party is not bound to expend a dollar, or to do any act to secure for himself the exercises or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another."   Law of Nuisances [ 2 Ed.] 506, and cas. cit. This condemns the second instruction given at defendant's instance.

The case of *Stewart v. Clinton*, 79 Mo. 603, is supposed to sanction that instruction ; but that is a misapprehension.   There the injury arose and was occasioned by reason of a pipe which the *plaintiff without leave* had opened from his cellar into the street, where it encountered the surface water then flowing and admitted it into the plaintiff's cellar.

The law of *contributory negligence* has no more place in an action of this sort than has the law of *self-defense*.   But the instruction was erroneous for the further reason that there was no evidence whereon to base it, the defendant having testified:  " *There was no earthly way for me to ever stop that water.*"

V.   There is no substantial difference between the allegations of the first and of the second petition, so that the former judgment is a conclusive bar against any opening of that judgment or of attacking the evidence upon which it was based.   That judgment established that a *nuisance existed*, and that it was caused by the acts of the defendant.   This being the case, and it being admitted at the trial that defendant had continued that nuisance, the only question left for determination was the *quantum* of the damages to be recovered.

But the jury by the verdict said the plaintiff was entitled to no damages.   This verdict was wholly unsupported, in the very teeth of the evidence, and should have been promptly set aside by the court of its own motion.

VI. The question of nuisance having been established at law, and, where this has been done, the courts will grant an injunction as a matter of course, where, as here, such nuisance is of a continuous or constantly recurring character. In such cases, cases where invasions of a party's legal right are of frequent occurrence, the right ·to injunctive relief is said to be " almost a matter of positive right." And courts of equity will more readily interpose in such instances where the damages recovered are merely nominal, and, therefore, inadequate to prevent a repetition of the injury. Law of Nuisances, 941, 416 ; 3 Pomeroy Eq., secs. 1347, 1350.

VII. The judgment will be reversed and the cause remanded, with directions to perpetually enjoin and restrain the defendant from further maintaining the nuisance in question, and that an · inquiry of damages be had covering the space of time from the rendition of the former judgment for plaintiff down to the time when such inquiry shall be had.

RAY, C. J., dissents ; BLACK, J., regards the action of the trial court as correct in trying the cause as simply an action at law, and concurs in reversing and remanding ; BRACE and BARCLAY , JJ., concur.