WILLIAM McKEE, Respondent, v. THE ST. LOUIS, KEOKUK & NORTHWESTERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 5, 1892.

1.    Obstruction of Watercourses: RIGHT OF ACTION OF A SUBSE-
QUENTLY INCOMING TENANT.    If a watercourse is wrongfully obstructed
by the building of a permanent embankment (in this cause this was
done by a railway company in the construction of its road), a tenant

of adjacent land, though he rents the land after the erection of the embankment and with knowledge thereof, can recover from the wrongdoer the damages to his crops from overflows caused by such obstruction.

2. ———: FORMER RECOVERY. When several annual crops are destroyed by different overflows, thus occasioned, the tenant may sue for the injury to each crop as it occurs, and, therefore, a former suit will be no bar to a recovery in another action for damages suffered subsequently to the institution of the first suit.

3. ———: MEASURE OF DAMAGES. The damages recoverable by the tenant in such an action consist of the injury done to the crop sued for. Where a tenant is not prevented by such an overflow from cultivating the land held by him, he is not entitled to the depreciation in the rental value of the land in consequence of such obstruction.

4. Damages: INSTRUCTIONS. An instruction in such an action, which directs the jury to assess the plaintiff's damages at such sum as they may believe he is entitled to under the evidence, is erroneous.

*Appeal from the Louisiana Court of Common Pleas.*
HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*Jno. W. Matson,* for appellant.

(1) Defendant's objections to the introduction of any testimony under the petition should have been sustained. It is not alleged that the culverts were carelessly, or negligently, filled up. *Abbott v. Railroad,* 83 Mo. 278; *Johnson v. Railroad,* 35 N. H. 369; *Waterman v. Railroad,* 30 Vt. 610. And when the culverts were filled they constituted part of the railroad bed and made a permanent embankment, or structure, and as this was done prior to plaintiff's tenancy the right of action for the same cannot be sustained by plaintiff. Dicey on Parties, 382; *Baldwin v. Calkins,* 10 Wend. 167; *Artwin v. Mayor of Baltimore,* 16 Md. 387; *McLeod v. Lee,* 17 Mo. 103; *Railroad v. Maher,* 91 Ill. 312; *Ellis v. State,* 7 Blackf. 534; *Rex v. Cross,* 2 Car. & P. 483; Thompson on Trials,

sec. 1921, p. 1401; *McKinley v. Railroad*, 40 Mo. App. 456. The erection of the embankment constituted a permanent structure. Gould on Waterways [2 Ed.] sec. 416, p. 687, and cases cited in notes 1 and 2. There can only be one recovery in such cases, and that by the owner or person in possession at the time of the original erection of the embankment. Gould on Waterways [2 Ed.] secs. 417, 418, pp. 688, 689; *Powers v. Council Bluffs*, 45 Iowa, 652; *Stodghill v. Railroad*, 53 Iowa, 341; *Railroad v. Loeb*, 118 Ill. 203; 1 Sedgwick on Damages [8 Ed.] sec. 95; 5 American & English Encyclopedia of Law, 20. Under allegations in petition plaintiff was a tenant from year to year (34 Mo. 420), and, therefore, the claim of damages for failure to sublet is not tenable, not having written permission from landlord (R. S. 1889, sec. 6368); and the cause of the alleged damages also existed at the time. *McKinley v. Railroad, supra.* The petition shows plaintiff knew of the stopping up of the culverts and the consequences of the same at the time of his leasing, and, therefore, cannot recover. *Railroad v. Hunter*, 50 Ill. 325; *Railroad v. Allen*, 38 Ill. 205; Gould on Waterways [2 Ed.] sec. 368, p. 664; *Railroad v. Maher*, 91 Ill. 312. The loss of rents occasioned by a nuisance is special damages, and cannot be recovered unless specially alleged and proved. *Parker v. Lowell*, 11 Gray, 358; *Plimpton v. Gardiner*, 64 Me. 360; *Rutter v. Fremont*, 47 Cal. 165. (2) The plea of *res adjudicata* was a good one, and the court erred in refusing to permit defendant to introduce testimony of the former recovery. *Troy v. Railroad*, 3 Foster, 83; *Powers v. Council Bluffs*, 45 Iowa, 651; *Maher v. Railroad*, 91 Ill. 312; *James v. City*, 83 Mo. 567; *Railroad v. McFarland*, 43 N. J. Law, 605; *Staple v. Spring*, 10 Mass. 72; *Stodghill v. Railroad*, 53 Iowa, 341; *Railroad v. Mihlman*, 17 Kan. 224; *Bird v. Railroad*, 30 Mo. App. 378,

*Fagg & Ball,* for respondent.

Under the pleadings and the evidence the respondent was clearly entitled to a verdict. *Jones v. Railroad,* 84 Mo. 151; *Rychlicki v. City of St. Louis.,* 98 Mo. 497; *Moss v. Railroad,* 85 Mo. 86; *Bird v. Railroad,* 30 Mo. App. 365; *Railroad v. Schneider,* 30 Mo. App. 626; *Culver v. Railroad,* 38 Mo. App. 130; *Autenrieth v. Railroad,* 36 Mo. App. 254; *Van Hoozier v. Railroad,* 76 Mo. 145; *Dickson v. Railroad,* 71 Mo. 575; *Rensan v. Railroad,* 78 Mo. 512. "Where the wrong done does not involve the entire destruction of the estate or its beneficial use, but may be apportioned from time to time, separate actions must be brought to recover the damages so sustained, and a former suit will be no bar to a recovery on another action for damages suffered subsequent to the institution of the first suit," and the party injured may bring the suit whether landlord or tenant. *Van Hoozier v. Railroad,* 70 Mo. 145; *Autenrieth v. Railroad,* 36 Mo. App. 263; *The Town of Troy v. Railroad,* 3 Foster, 83; *Turnpike Co. v. Stephens,* 13 N. H. 28; *Pinney v. Berry,* 61 Mo. 367.

BIGGS, J.—The defendant's railroad is constructed north and south along the Mississippi river bottom, the hill lands lying immediately to the west, and to the east the low lands extending to the river. At the place where the railroad passed along or near to the eastern edge of land occupied by the plaintiff, two branches extended from the hill lands on the west in an easterly direction across the strip of land upon which the railroad was constructed. In the original construction of the road culverts were built, through which the waters of the branches escaped and flowed eastwardly through their accustomed channels. In May, 1889, the defendant, claiming that it was necessary for the proper

improvement of its roadbed, closed up the two culverts with solid embankments, and undertook to divert the waters of the two branches to another branch by means of an artificial ditch, extending south along the west side of the railroad track. The plaintiff occupied the land as a tenant for the year 1890. He instituted this action in the Louisiana court of common pleas, alleging in his petition that the branches were watercourses; that the defendant had obstructed them; that by reason of the obstructions the land occupied by him as a tenant had been flooded during the months of April, May, June and July, 1890, and that, by reason of the premises, "he had been unable to cultivate, use and raise crops on said land, or to rent, lease or collect rents thereon, or derive any benefit or income from the same during said year 1890," etc. The defendant's answer was, *first*, a general denial; *second*, that, at the time the plaintiff leased the land, he knew of the embankment, and that it was a permanent structure; *third*, plea of former recovery. The jury returned a verdict in plaintiff's favor for $75, $15 of which were voluntarily remitted, and a judgment was entered by the court for the remainder. The defendant has appealed, and assigned many errors. As we have concluded that the judgment cannot be upheld, we will only discuss such assignments as may be necessary to make clear our ideas of the legal aspects in the case, and the manner in which it ought to be retried.

I. In the first place the defendant's counsel argues that no right of recovery can exist in the plaintiff, because the embankments had been made prior to the renting of the land by him, and that the obstructions complained of were necessarily permanent, of all of which the plaintiff was fully advised, as appears from both his petition and his evidence. Therefore, it is insisted that the circuit court committed error in per-

mitting the plaintiff to introduce any evidence at all, or at least in refusing to sustain the defendant's demurrer to the evidence. This argument seems to have for its foundation the idea that, as the obstructions to the watercourses (if it could be claimed that the branches were watercourses) were necessarily permanent, and as they were erected long prior to the plaintiff's occupation or right of occupation under his contract of renting, and as he acted with full knowledge of the situation, he is without a remedy for the damage sued for. This position is sought to be supported upon the theory, that the resulting damage (whether present or prospective) to the land in question was, by reason of the permanent character of the obstruction, original and complete, and that the right to recover the same vested immediately in the owner upon the completion of the obstructions. The legal proposition last stated cannot be invoked, and is not applicable to what may be called overflow cases; that is, where lands have been flooded by reason of the obstruction or diversion of a watercourse.

In most cases the rule is as stated; that is, that damages caused to land by a permanent nuisance must be sued for by the owner in one action, because the entire damage has been suffered, and it is capable of being definitely ascertained. This principle is of easy application where the owner of a servient estate, situate on a watercourse, has been deprived of the use of the water by a permanent obstruction or diversion of the stream by a dominant proprietor. In such case, the diversion of the water is a fixed fact, and is in nowise contingent, thereby rendering the resulting damage certain and complete. In such a case the entire damage must be sued for by the owner in one action, unless the property is under a prior lease, in which event, both owner and tenant could sue; the former

for injuries to the freehold, the latter for injuries to the possession during the continuation of the lease. The case of *Stodghill v. Railroad*, 53 Iowa 341, upon which the defendant relies, is such a case. In such a case it is quite clear to us that an incoming tenant could not complain of the continuation of the nuisance, because the right to recover the entire damages to the land is vested in the owner, which would necessarily deprive the tenant of a right to sue. The law would presume that the inconvenience to which such a tenant would be subjected from a loss of the water was considered in making the contract for rent.

But is this true in a case like we have here? We think not. The case of *Van Hoozier v. Railroad*, 70 Mo. 145, was an overflow case. The plaintiff in that case claimed that the defendant, in constructing its road, diverted a stream of running water, whereby portions of the plaintiff's land were flooded in the year 1875, and the crops growing thereon destroyed. The defendant pleaded in bar to the action a former recovery for the destruction of the plaintiff's crops on the same land for the years 1873 and 1874. The court held the plea not good. It said: "In cases of nuisance the rule is well settled that the plaintiff cannot recover for injuries not sustained when action is commenced. It is equally well settled that, where the injury inflicted is of a permanent character, and goes to the entire value of the estate, the whole injury is suffered at once, and a recovery should be had, therefore, in a single suit; and no subsequent action can be maintained for the continuance of such injury. But where the wrong done does not involve the entire destruction of the estate, or its beneficial use, but may be apportioned from time to time, separate actions must be brought to recover the damages so sustained, and former suits will be no bar to a recovery in another action for damages suffered

subsequent to the institution of the first suit." Apply-
ing this law to the case, the court said: "Portions of
these lands were annually cultivated after the nuisance
was levied, and the crops thereon annually injured, so
that it is patent that the injury thereby inflicted did
not go to the entire value of the estate, but was of yearly
occurrence, and varied in extent with the volume of
water discharged upon the land. Such being the facts,
it is plain that the injury is a continuous one, suscepti-
ble of periodical apportionment, and, therefore, capable
of being redressed by successive actions."

In *Dickson v. Railroad*, 71 Mo. 575–579, it was
said: "In this case the nuisance complained of is the
act of defendant in changing the channel of a running
stream on his own land, and thereby so directing it as
to overflow the adjacent land of plaintiff, thus destroy-
ing his crops for the years 1874 and 1875. Until after
the injury occurred, no right of action existed in
plaintiff, and his damages could only be measured after
the injury was inflicted." The rule, as thus estab-
lished, is that, where the injuries sustained by reason
of the continuation of a nuisance consist in the
destruction of crops from year to year, the plaintiff
will not be limited in his actions, but may sue as often
as damage may occur. The foundation of this rule is,
that future damages in such cases are speculative, and
successive actions therefor are maintained on the theory
that the continuation of the nuisance is, in the eye of
the law, equivalent to the erection of a fresh one for
each day of the continuation, and, therefore, each suc-
cessive action is deemed to be predicated upon a new
wrong. Gould on Waters, sec. 387.

Hence, any subsequent occupant of the land,
whether tenant, purchaser, heir or devisee, may main-
tain such actions. Angell on Watercourses, sec. 399.
As to such persons, the continuation of the nuisance,

after the intervention of their rights, must be regarded as the erection of a new nuisance, and their actions for resulting damage are in respect of new wrongs. Therefore, we conclude that the plaintiff in the present case has a right of action for damages resulting to him as a tenant by reason of the alleged obstruction of the watercourses. In the case of *Van Hoozier v. Railroad, supra,* the supreme court has tacitly recognized the right of an incoming tenant to maintain such an action. There the land was let for a part of the crop. The landlord alone sued. Objection was made that the tenant ought to have been made a party, as he and plaintiff were tenants in common of the crops which were alleged to have been destroyed. The court answered the objection in this way: "The petition alleges the partial destruction of the crops, and, so far as its allegations are concerned, the plaintiff appears to be the sole owner; but, as it appears from the testimony that the land was leased on such terms as made the plaintiff and his tenant tenants in common of the crop until it was divided (*Johnson v. Hoffman,* 53 Mo. 504), and as no objection was, at any time, taken to the non-joinder of the tenant as a party plaintiff, the present plaintiff was entitled to have his damages apportioned at the trial."

II. In plaintiff's first instruction the court declares the measure of damage to be the fair rental value of so much of the land as was flooded during the year 1890. The second instruction concluded in this way: "And assess his (plaintiff's) damages at such a sum, not exceeding the amount claimed in his petition, as they shall believe from the evidence in the cause plaintiff *is entitled to.*" Both instructions are wrong. The error in the latter is obvious and needs no discussion. The first is wrong, because the plaintiff, who was a tenant for a year *only,* had nothing to do with the rental value of the land, and it was something entirely foreign to

the cause, unless he had paid cash rent, and was unable to cultivate the ground by reason of the accumulated water. But no such case is presented by the record. The evidence is that he occupied the land under a verbal lease presumptively with no right to sublet. The plaintiff's own testimony tended to show that fifteen or twenty acres of growing corn were destroyed. The instruction should have confined the damages to the value of the crops thus destroyed. On a retrial the plaintiff ought to amend his petition, so as to show the actual injuries suffered, and make his pleading conform to his proof. These instructions also assume that the branches in question were in fact watercourses. This was an issue in the case, and the evidence on the subject was conflicting. Whether the branches were, in fact, watercourses within the meaning of the law, was a question for the jury. The court should have modified this instruction by calling the attention of the jury to the defendant's instructions, which defined watercourses, and required the jury to find that the branches were watercourses, before they could return a verdict for the plaintiff.

III. The plaintiff had possession of the same land in 1889. He sued and recovered from the defendant the value of his crops for that year, which were destroyed by reason of the same nuisance. The defendant insisted that the recovery in that suit was a bar to this. Our discussion on the first proposition shows that this contention is untenable, and this assignment will, therefore, be overruled. There is no question of limitation in this case. *Bird v. Railroad*, 30 Mo. App. 365.

What we have said answers all other objections made in the appellant's brief, and we apprehend that the case can be retried without any further difficulty.

With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. So ordered.