J. L. CARSON, Respondent, v. CITY OF SPRINGFIELD, Appellant.

St. Louis Court of Appeals, March 21, 1893.

1. **Liability of a Municipal Corporation for the Change of the Grade of any of its Streets.** A city is answerable under the constitution for the damages caused by a change in the grade of any of its streets to land fronting thereon, and the statute in that regard (Revised Statutes, 1889, sec. 1821), applies to cities of the third class.

2. ———: MEASURE OF DAMAGES. The injury thus caused must be considered as permanent and entire, so that they must be assessed in one action, and the measure thereof is the difference between the market value of the land before and after the change of grade.

3. **Surface Water:** LIABILITY OF MUNICIPAL CORPORATIONS. A city which so constructs its streets and the gutters thereof as to divert into certain of these gutters the surface water of a large area, yet fails to provide sufficient means for the escape of the water thus collected in these gutters during ordinary rains, is answerable for the damages done to adjoining lands by the consequent overflow thereon of the surface water so collected.

4. ———: MEASURE OF DAMAGES. But, since such cause of overflow can be readily remedied by the construction of suitable underground drains, or the enlargement of these gutters, the wrong will be treated as temporary in character, and, consequently, in an action for the damages thus occasioned by overflows only the damages actually sustained at the date of the institution of the suit can be recovered.

*Appeal from the Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*Thomas B. Love* and *Barbour & Stillwagen*, for appellant.

(1) It is obvious that the rule laid down by the trial court on the measure of damages is erroneous, and has no application whatever in the case at bar. *Wallace*

*v. Railroad*, 47 Mo. App. 491; *Markt v. Davis*, 46 Mo. App. 272; *Pinney v. Berry*, 61 Mo. 359; *Van Hoozier v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo. 575; *Benson v. Railroad*, 78 Mo. 504; *Brown v. Railroad*, 80 Mo. 457; *Givens v. Van Studdiford*, 86 Mo. 149; *Smith v. Railroad*, 98 Mo. 20; *Blunt v. McCormick*, 3 Denio, 283; *Plate v. Railroad*, 37 N. Y. 472; *Henderson v. Railroad*, 78 N. Y. 423; *Uline v. Railroad*, 101 N. Y. 117; *Cobb v. Smith*, 38 Wis. 21; *Carl v. Railroad*, 46 Wis. 625; *Thayer v. Brooks*, 17 Ohio, 489; *Hopkins v. Railroad*, 50 Cal. 190; *Severy v. Railroad*, 51 Cal. 194; *Stein v. Burden*, 60 Am. Dec. 453. (2) By reference to the plaintiff's own statement in evidence, and to all the evidence, it is manifest that the overflowing of the gutters, and flooding plaintiff's premises, primarily resulted from the fact that the underground drain was too small, and the grade of St. Louis street between Jefferson street and Benton avenue was too slight to carry off the volume of water on occasions of hard and continuous rains. Evidently, then, it was a defect in the plan adopted and used by the city, and hence no liability attaches for the damages caused by the surface waters overflowing the curbing and gutters. *Stewart v. City of Clinton*, 79 Mo. 603, 612; *Rychlicki v. City of St. Louis*, 98 Mo. 497, 501; *Haney v. City of Kansas*, 94 Mo. 334; *Abbott v. Railroad*, 83 Mo. 271; *Jones v. Railroad*, 84 Mo. 151; *Foster v. City of St. Louis*, 71 Mo. 157.

*Jas. R. Vaughan* and *Chas. A. Cox*, for respondent.

(1) Where a street is graded, or regraded, or any public improvement made, damaging an abutting property owner, he is entitled to damages under the provisions of article 2, section 21, Missouri Constitution, and the laws passed in pursuance of the same.

The first count is an action for this class of damages. Revised Statutes, secs. 1815, 1821. The doctrine urged by appellant on this subject, as set forth in *Foster v. City of St. Louis*, 71 Mo. 157, is no longer the law in this state. *Werth v. City of Springfield*, 78 Mo. 109–118; *Chicago v. Taylor*, 125 U. S. 161. (2) A city has no right to collect surface water in drains and gutters and discharge it in its accumulated form and in a body upon the lands of an owner abutting the streets in such city, and, if it does so, it is liable in damage to such owner. *Rychlicki v. City of St. Louis*, 98 Mo. 500; *Stewart v. City of Clinton*, 79 Mo. 612; *Paddock v. Somes*, 102 Mo. 238; *McCormick v. Railroad*, 70 Mo. 360; *Pye v. City of Mankato*, 36 Minn. 373; *Hitchims v. Mayor, etc.*, 68 Md. 100; *Davis v. City of Crawfordsville*, 119 Ind. 1; *O'Brien v. City of St. Paul*, 33 Am. Rep. 470. (3) The damages under both counts in the petition were permanent in their nature, and the plaintiff had the right to recover all damages by him sustained, embraced in his petition, to said land. Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, then the damage is an original damage, and may be at once fully compensated. A permanent grade was established, and the improvements were permanent in their nature. *James v. City of Kansas*, 83 Mo. 570; *Bird v. Railroad*, 30 Mo. App. 378; *Bowers v. Council Bluffs*, 45 Iowa, 652; *Troy v. Railroad*, 3 Foster, 83; *Railroad v. Twine*, 23 Kan. 585; *Smith v. Railroad*, 98 Mo. 20; *Babb v. Curators*, 40 Mo. App. 173; *Martin v. Railroad*, 47 Mo. App. 452; *Taylor v. Railroad*, 38 Mo. App. 672; *City of North Vernon v. Voegler*, 103 Ind. 314; *Fowle v. New Haven*, 17 Am. Rep. 106.

BIGGS, J.—Section 21, of article 2, of the State Constitution, provides: "That private property shall not be taken or damaged for public use without just compensation.  Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into the court for the owner, the property shall not be disturbed, or the proprietary rights of the owner therein divested."

For the purpose of enforcing this constitutional provision in certain cities, wherein private property should be needed for public use, or it became necessary to grade or regrade any street, or to change the grade thereof, by which private property would be damaged, the legislature has provided a mode for ascertaining such damages (sections 1815, 1820 of the Revised Statutes of 1889).  Section 1821 of the statutes provides that, when the authorities of the city have graded or regraded or changed the grades or lines of any street or alley, to the damage of any owner of land, and such improvement has been made without the consent of such owner, and the damage has not been agreed on or ascertained in the manner above provided, such owner may institute an action at law against the city to ascertain and recover the amount of damages caused by such improvement.  These provisions of the statute apply to cities of the third class.

The plaintiff is and was at the times hereinafter mentioned the owner of a lot in the city of Springfield, a city of the third class, which lot is situated at the northeast corner of St. Louis and Jefferson streets, fronting ninety-four (94) feet on the south side of St. Louis street, and extending south one hundred and seventeen and one half (117 1-2) feet along the east

line of Jefferson street. The plaintiff has an elevator building on the corner, and two business houses on the east side of the lot, fronting on St. Louis street, and also two store rooms south of the elevator building, fronting on Jefferson street. In 1888–1889, the authorities of the city by proper ordinances authorized the improvement or reconstruction of St. Louis and Jefferson streets in front of the plaintiff's property. The plan for the improvements required the elevation of the grade of Jefferson street about two feet at the south end of the plaintiff's lot. This change in the grade decreased gradually to the north, until it reached the elevator building. This building was about on the established grade. The grade on St. Louis street was raised from two to ten inches in front of the store rooms. The plan also provided for the construction of gutters of certain dimensions along both sides of the streets. These improvements were made without the consent of the plaintiff, and, the defendant having failed to have his damages assessed in the manner above prescribed, he brought this suit.

In the second count of the petition, which is authorized by section 1821 of the statute, the plaintiff seeks to recover the damages resulting to his property from the change in the grades of the streets. The first count is based on the negligent acts of the defendant in that, at the time the improvements were made on Jefferson and St. Louis streets, the defendant so graded and guttered these streets, and other streets immediately west and south of the plaintiff's property, as to collect the surface water from a large area into the gutters in front of the plaintiff's premises, and that by reason of the insufficiency of the gutters on both sides of Jefferson street, and on the east side of St. Louis street, large quantities of water, dirt and sand were discharged into the plaintiff's premises to his great injury.

On the trial the plaintiff recovered $1,200 on the first count, and $500 on the second. The defendant has appealed.

There are many errors complained of, which pertain to the instructions given and refused, and to the admission and rejection of evidence. Under the view which we have taken of a controlling question, it will not be necessary to notice the assignments in detail.

It will be observed that the plaintiff sues for two kinds of damages, one for raising the grade of the street in front of his property, and the other for flooding his lot and buildings with surface water. Prior to the adoption of the constitution of 1875, a municipal corporation was not liable to an abutting owner of land for damages resulting from a change in the grade of a street. Such damages were regarded as *damnum absque injuria.* It was only where such work was *negligently* done that the owner could recover anything. *Foster v. City,* 71 Mo. 157. Now all damages to private property, which result from a change in the grade of a street, must be paid by the municipality. This has been held to be "the taking or damaging of private property for public use," within the meaning of the Constitution. *Werth v. City of Springfield,* 78 Mo. 107; *Householder v. City of Kansas,* 83 Mo. 488. As the defendant did not dispute that the grades on St. Louis and Jefferson streets were changed as alleged, and that the plaintiff's damage had not been agreed on or ascertained in the manner provided by law, the plaintiff's right of action under the second count was placed beyond dispute, and it was only necessary to ascertain the damages which were directly attributable to the change in the grades of the streets.

The evidence was also sufficient to establish the cause of action stated in the first count. A city is not liable for the incidental change of the flow of surface

water, but it is the established law of this state that the authorities of a city cannot collect surface water into drains or sewers, and discharge it in unusual quantities onto private property. *Rychlicki v. City of St. Louis*, 98 Mo. 501; *Paddock v. Somes*, 102 Mo. 239. It would seem to follow logically from this that, if a city by means of gutters should collect the surface water from a large area, it would be responsible for its overflow during ordinary rains by reason of insufficient gutters, or for failure to provide other sufficient means for its escape. The plaintiff's evidence tended to prove that, at the time the improvements on St. Louis and Jefferson streets were being made the city so graded and guttered other streets to the west and south, that the flow of surface water over a large area was diverted to the gutters on the south side of St. Louis street and to the west of the plaintiff's premises, and also to the gutters on both sides of Jefferson street extending to the south, and that in times of ordinary rains the waters would meet at the intersection of the streets opposite to the plaintiff's lot, and there overflow the gutters and escape into the plaintiff's store rooms and onto his lot. There was also evidence tending to prove that the defendant had constructed at the point of intersection an underground drain to the north side of St. Louis street, so as to let a portion of the accumulated water pass north on Jefferson street. But the evidence showed that the drain was insufficient, and was constantly filling up with trash.

The injury done to the plaintiff's property by reason of the change in the grade of the streets must be considered as permanent and entire, and for the recovery of which but one action is necessary. *Sheehy v. Cable Road*, 94 Mo. 574; *Babb v. Curators*, 40 Mo. App. 173; *Givens v. Van Studdiford*, 86 Mo. 149; *James v. City of Kansas*, 83 Mo. 567; *Bird v. Railroad*, 30 Mo.

App. 365. The general rule is that, whenever the nuisance or improvement is permanent in its character, or when the injury flowing therefrom is permanent, regardless as to whether the nuisance remains or is abated, the entire damage must be assessed in one action. The measure of damages in such cases is the difference in the market value of the property affected before and after the making of the improvements, or the erection of the nuisance. As the change in the grade of the streets must be regarded as a permanent improvement, it would be competent for the plaintiff to prove as damages on this score the decrease in the market value of his property by reason of such change of grade, but, in arriving at this, no regard whatever should be had to the subsequent flooding of the premises by the undue accumulation of surface water. If the plaintiff's damages had been assessed in the first instance, no such consideration, which is purely speculative, would have been permitted to influence the assessment.

When the nuisance or cause of the injury may be removed or remedied at any time, the measure of damages is the actual damage sustained up to the date of the institution of the suit. Damages accruing subsequently must be recovered in successive actions. *Pinney v. Berry*, 61 Mo. 360; *Brown v. Railroad*, 80 Mo. 457; *Smith v. Railroad*, 98 Mo. 20; *Paddock v. Somes*, 102 Mo. 239; *Van Hoozier v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo. 575; *Benson v. Railroad*, 78 Mo. 504.

In the case of *Pinney v. Berry, supra*, the plaintiff sued for damages for overflow of his farm, caused by the erection of a dam by the defendant. The court held that the dam was a temporary structure which might and could be removed at any time, and that the proper measure of the plaintiff's damage was the loss in the rental value, and not the difference between the

market value of the farm just before and immediately after the occurrence of the injury.

The same rule was announced in *Brown v. Railroad, supra,* where the plaintiff sued for damages for the overflow of his farm, caused by the construction of a dam by the defendant across Beaver Dam fork of Salt river.

So, in *Smith v. Railroad, supra,* where it appeared that the location of the railroad track on the street was temporary, the plaintiff's damage was confined to that actually sustained, including any diminution of rentals, to the time of the institution of the action.

In *Paddock v. Somes, supra,* the plaintiff sued for damages to his lot by reason of water and sewage discharged thereon by means of a sewer pipe constructed by the defendant. The measure of damage was held to be that actually sustained.

The cases of *Van Hoozier v. Railroad, Dickson v. Railroad, Benson v. Railroad* and *McKee v. Railroad,* 49 Mo. App. 174, were suits for damages for the overflow of land. It was decided in all of these cases that such wrongs or injuries do not involve the entire destruction of the estate, or its beneficial use, but may be apportioned from time to time, and that the recovery must be confined to the damage actually sustained at the date of the institution of the suit. This seems to be the rule in overflow cases, regardless of the character of the obstruction or the cause of the damage.

It is quite evident that the cause of the overflow of the surface water upon the plaintiff's lot is of a temporary character, and it could be easily remedied by constructing a suitable underground drain north across St. Louis street, or by increasing the size of the gutters in front of the plaintiff's property. Therefore, the plaintiff's measure of damages on this branch of the case is the actual damage sustained at the date of

the institution of the action, either from loss of rentals or in the destruction or damaging of property. The case, however, was tried upon an entirely different theory. The court permitted the plaintiff to prove his entire damage,—that is, by the change of grade and flooding, — by showing the difference between the market value of the property before and after the improvements; and one of the witnesses was asked, and permitted to testify, as to the difference in the market value of the property just before the improvements, and at the date of the trial, which occurred several years afterwards. The estimates of witnesses were based on the assumption that the gutters and drains would remain in their present condition, and that the plaintiff by reason thereof would suffer from overflows in the future as he had in the past. The instructions were to the same effect. Neither was there any attempt made to separate the damages. Therefore, the apportionment made by the jury was purely arbitrary.

It is not necessary to notice other assignments, as they are mere accidents of the trial, and are not likely to occur again. The judgment will be reversed, and the cause remanded. All the judges concur.