ELIZA LYNCH et al., Respondents, v. THE ST. LOUIS, KANSAS CITY & COLORADO RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 18, 1914.

1. WATER AND WATERCOURSES: Surface Water. Collection and Discharge: Spillway. If a railway company in building its track across a basin or depression on plaintiff's lands constructs an embankment causing a large pond of water to form from the adjacent drainage and it conducts the overflow of such water through a ditch to a spillway under its track where it is discharged in a body onto plaintiff's other lands, it is liable in damages.

2.  RES ADJUDICATA: Eminent Domain: Subsequent Action.  A railway company in building its tracks dammed up a large body of water. It then connected this by a ditch to a reservoir on plaintiff's lands which it had condemned for that purpose, and constructed a spillway under its tracks through which the surplus water coming into the reservoir passed out with great force onto other of plaintiff's lands. In the condemnation proceedings the issues were the value of the land taken for the reservoir and the damage it did to plaintiff's other adjoining lands and a gross sum was allowed plaintiff. Afterwards he brought an action for damages to the other land by reason of the water passing on to it through the spillway and washing ditches and otherwise injuring it. It was *held* that the former proceeding of condemnation was *res adjudicata*, and the latter action could not be maintained.

3.  JUDGMENT: Estoppel.  In the same cause of action every question which might have been brought forward is included in the judgment and is as binding in a second action as if specially put in issue in the former action

Appeal from Johnson Circuit Court.—*Hon. A. A. Whitsett,* Judge.

REVERSED

*Paul E. Walker* and *J. W. Suddath & Son* for appellant.

(1) An instruction should authorize a finding of negligence, only when it specifies the act which the jury is to find the party committed and which act constitutes negligence. Duerst v. Stamping Co., 163 Mo. 607-624; Allen v. Transit Co., 183 Mo. 411-435; Schaaf v. Basket & Box Co., 151 Mo. App. 35; Sommers v. Transit Co., 108 Mo. App. 319. (2) An instruction complete in itself and purporting to cover the entire case, but ignoring some necessary element is not and cannot, be cured by others which do not ignore that element. Frederick v. Allgaier, 88 Mo. 598; Goetz v. Railroad, 50 Mo. 472; Fitzgerral v. Hayward, 50 Mo. 516; Thomas et al. v. Babb, 45 Mo. 384. (3) The question of *res adjudicata* should not be submitted to the jury. The court must determine the effect of the decree

from the pleadings, evidence and instructions, in the former case, and instruct them that it is, or is not *res adjudicata*, and that plaintiff cannot recover on this account, that it give or refuse a peremptory instruction on this defense. Charles v. Railroad, 124 Mo. App. 293; Young v. Baird, 124 Mo. 590. (4) When demurrer to any defense is overruled, if defendant has saved point all through by objection, he does not waive point by asking instructions on theory taken by the court. Donald v. Wright, 147 Mo. 639-648.

*W. L. Chaney* and *Jas. A. Kemper* for respondents.

The dominant proprietor has no right to divert or collect surface water and cast it, in a body, on the servient lands. Paddock v. Somes, 102 Mo. 226; Weishar v. Sheridan Admr., 168 Mo. App. 181; Theele v. Planing Mill Co., 165 Mo. App. 707; Grant v. Railroad, 149 Mo. App. 306; Lewis v. Springfield, 142 Mo. App. 84; Ready v. Railroad, 98 Mo. App. 467; Cox v. Railroad, 174 Mo. 588.

ELLISON, P. J.—Defendant is a railway corporation which built a line of railroad through and over plaintiffs' land lying in Johnson county. Near these lands there is a wide depression or basin and in building its road over this defendant found it necessary to construct a fill or dam extending into plaintiff's lands, reaching thirty feet in height at its greatest elevation. A natural hollow or ditch had received the surface waters from surrounding lands and carried them down to a natural outlet, known as Scaly Bark Creek. But defendants' fill was built across this ditch and across the entire basin without a culvert or other outlet; in consequence of which the waters flowing from rains were dammed into a lake extending back over the entire basin, in some places to a great depth and

covering a large area of land, including a part of plaintiffs'.

Afterwards, defendant constructed a reservoir and also a spillway leading from the reservoir under its track at a point on defendant's land west of the west edge of this large body of water and dug a drain ditch on the north of the fill from the bank of the lake leading to the reservoir and spillway, whereby the water was discharged under the track, across the right of way and onto plaintiff's lands on the south in such concentrated volume and force as to wash ditches of great depth and width and practically to destroy the value of much of it. This action was brought to recover damages for such injury and plaintiff had judgment in the trial court.

If there was no more in the case than what we have stated there could be no doubt of defendant's liability; the law being that while one may protect himself against surface water he cannot so divert its natural escape by collecting it in a body and letting it out over his neighbor's lands. [Rychlicki v. St. Louis, 98 Mo. 497; Paddock v. Somes, 102 Mo. 226; Grant v. Ry. Co., 149 Mo. App. 306.]

But it was shown that after defendant had acquired a right of way over plaintiffs land it began another proceeding against plaintiff wherein it sought to have and did have about three acres of his land adjoining its right of way condemned for a reservoir and that it dug a ditch leading from the lake to and through this land to a point where it constructed the spillway under its tracks whereby the overflow water from the lake escaped south onto other parts of plaintiff's land as stated. In this proceeding plaintiff was allowed as damages the sum of $425, and defendant insists that that sum under the issues in the case, covered every phase of the damages to his land; but that even if it did not, it could and should have done so if plaintiff

had requested, and that therefore the matters now in controversy are *res adjudicata.*

It appears that the proceedings to condemn the small tract for the reservoir were instituted before a justice of the peace who appointed three commissioners, and that these assessed damages unsatisfactory to the railway and it appealed to the circuit court. In the latter court the report of damages made by the commissioners before the justice was set aside and new commissioners appointed who assessed damages so small in amount that they were unsatisfactory to the plaintiff and their report was set aside by the circuit court and a trial then had in such court with the aid of a jury and a verdict rendered against the railroad company for $425. Before this last trial the railway company had appropriated the land, by constructing the reservoir and spillway. And in the course of that trial every element of damage to plaintiff arising from the reservoir and spillway was seen, realized and considered.

Plaintiff seeks to avoid such bar to his present claim by the insistence that it was not tried in the former proceeding. In this he is in error as a matter of fact. He says that in the first action "the investigation was confined to the land taken, the construction of the reservoir and the effects thereof on the market value of the whole farm, without reference to any condition that might result therefrom affecting the lands on the south side of the right of way, subsequent thereto, or at any time whatever." The record of the former trial in no way supports that view. On the contrary the evidence taken at the other trial and the instructions thereon show that every issue as made by the evidence in this case, was considered and contested at that time.

In the first place plaintiff and others testified in this case as to the damage to the *whole* tract, north and south of the railroad, in consequence of the reservoir

and spillway and so they did in the other trial. In this case plaintiff and other witnesses testified as to surplus water flowing through the spillway on to his land south of the railroad and washing ditches and to its consequent injury to the whole tract. So in the other trial the testimony (much of it advanced and drawn out by plaintiff) was as to the damages to the whole eighty acres by waters accumulating and thrown out upon its surface and "by the situation of the reservoir and its effect upon the farm;" and the damages "incident" to the establishment of the reservoir. But more than that; witnesses were examined as to the difference in amount of damages without and with the spillway emptying the waters on to the land south of the railroad; one, or more, witnesses testifying that if the spillway was "stopped up" there would be no damage to the south side, "provided they keep their water all up" on the north side; and others placing in their estimate, the injury especially accruing to the south side. This view of the issues made by the evidence in the other trial is accentuated by the instructions there given and refused. The railway company sought to exclude damages to the land on the south side of the track but the court refused its instructions to that effect. On the other hand an instruction for this plaintiff was broad enough to permit a consideration of all the elements of damage considered and stated by the witnesses.

The foregoing demonstrates that the parties actually contested the cause of action in the trial of damages for the condemnation of the land for the reservoir. But if we should concede they did not do so in point of fact, yet it is manifest they might have done so, and that concludes them as well as if they had done so. The injurious effect of the reservoir and the spillway throwing the water on plaintiff's land was apparent and the damages were susceptible of being then estimated. The nature of the injury was permanent and

plaintiff could not be asked to wait for each recurring injury. Nor should the defendant be asked to respond to a separate action at every washing of a new ditch. "Under the well known rule of *res adjudicata* every question which properly belongs to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time, are included in the judgment, and it is as binding upon those matters as if they had been specifically put in issue. This rule is based upon the principle that a party must try his entire cause of action or make his entire defense in the same action, and will not be permitted to split up the cause of action or defense into several parts and litigate each separately, when all the matters properly and naturally relate to the subject matter in litigation, and could properly and logically have been tried in the same cause; but this rule does not extend to matters which are wholly independent of and have no relation or connection with the subject of the litigation." [Summet v. Realty Co., 208 Mo. 501, 511.] And this is the utterance of many other cases. [Emmert v. Aldridge, 231 Mo. 124, 128; Central v. Johnson, 236 Mo. 575, 603.] In Garland v. Smith, 164 Mo. 1, 22, the Supreme Court said that, "Where the purpose and object of the former action are the same with the late action, it is not to be questioned that the judgment concludes everything which might have been brought forward, although not in fact pleaded or in evidence but where the subsequent action is upon a different claim, the former judgment only bars those things which were in issue or included in the issue in the former action or suit, nor will the judgment bar another cause which might have been joined with the former cause of action but was not, and if different proofs are required to sustain two actions, the judgment in one is no bar to the other." Applying these statements of the law, it leaves plaintiff without any standing. The two actions here con-

sidered were for the same purpose, viz., the recovery of damages by reason of injury to plaintiff's farm consequent upon the building the reservoir with its appendant spillway. The present action was "included in the issue in the former action." It is the same cause of action. For it must be remembered that the former action was not merely to recover the price of the land taken for the reservoir, but for the damages to the other land which followed that taking and that purpose. The purpose of the taking was to collect the water in the reservoir and its effect was to discharge its surplus through the spillway. We note the distinction between two classes of cases made in Garland v. Smith and Cromwell v. County of Sac, 94 U. S. 351, but find plaintiff's action condemned by each.

The result of the foregoing views is to reverse the judgment. All concur.