THE STATE ex rel. MISSOURI PACIFIC RAILROAD COMPANY v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

Division One, December 19, 1924.

1. **CERTIORARI: To Court of Appeals: Railroad Culvert: Diversion of Waters of Natural Stream: Damage to Public Road.** The Court of Appeals did not contravene any previous decision of this court in ruling that a railroad company is required by statute to maintain suitable openings through its right of way and roadbed to afford

State ex rel. Mo. Pac. Ry. Co. v. Allen.

sufficient outlet to drain and carry off the waters of a natural stream, including surface waters, wherever the construction of the railroad embankment makes such openings necessary; and that the railroad company is liable in damages to a special road district for the washing away of a public road by such waters, where such injuries are caused by the construction of a culvert of insufficient capacity to carry said waters or by failure to construct proper and sufficient drains from the mouth of such culvert through its right of way to permit the waters to escape therein to the natural watercourse.

2. ———: ———: ———: ———: Construction by Director General of Railroads. The Court of Appeals did not contravene any previous decision of this court in ruling that the railroad company is liable for damages for the destruction of a public road caused by the diversion of the waters of a natural stream and surface waters and due to the construction, by the Director General of Railroads, of a culvert through the railroad embankment, where the control by the Director General has ceased and the railroad company has maintained and continued such insufficient and inadequate culvert, and the injury was caused after the control of the railroad had been returned to the railroad company.

Citation to Headnotes: Railroads, 33 Cyc. 326, 45.

## Certiorari.

Writ quashed.

*Jas. F. Green* and *W. C. Russell* for relator.

(1) In holding that the relator was liable respondents failed to follow the decision of this court in Cox v. Ry. Co., 174 Mo. 588. In the case at bar the Court of Appeals held the railroad company liable because it constructed and maintained ditches and drains along the' side of its roadbed which connected with a natural watercourse, and enlarged the outlet which the original petition said was insufficient. This court decided in the Cox case that the common-law rule as to surface water prevails in this State. That rule holds that owners of lands may improve them by obstructing or diverting surface water, provided that it be not done in a reckless man-

ner, resulting in injury to some other person. It was surface water or overflow water which did the damage in this case, because the petition alleges and the proof shows that it was in times of "excessive rains" that the old rock culvert proved insufficient or inadequate. (2) The act of the Director General in 1919, in constructing the concrete culvert, coupled with the act of God in the spring of 1920, was the proximate cause of the plaintiffs' injury, and if there was any liability on the part of anyone, it was that of the Director General and not the relator, and the opinion of the Court of Appeals in holding that the railroad company was liable and not the Director General is in conflict with the following controlling decisions of this court: Adams v. Railroad Co., 229 S. W. 790; Preston v. Railroad Co., 239 S. W. 1080; Rhodes v. Missouri Pacific, 234 S. W. 1026; Fitzsimmons v. Missouri Pacific, 242 S. W. 915.

*Davis, Dameron & Davis* for respondents.

(1) The opinion of the Court of Appeals holding that a railroad company is liable for injuries resulting from a nuisance continued and maintained by it after it came into possession of the premises, is not in conflict with any controlling decision of the Supreme Court. Grogan v. Foundry Co., 87 Mo. 321; Tate v. Railroad, 64 Mo. 149; Payne v. Railroad, 112 Mo. 6; Wayland v. Railroad, 75 M. 548; Pinney v. Berry, 61 Mo. 359; Dickson v. Railroad, 71 Mo. 575. (2) The opinion of the Court of Appeals in holding that the petition in the case of Mill Creek Road District v. Missouri Pacific Railroad states a cause of action is not in conflict with any opinion of the Supreme Court. Hurst v. City of Ash Grove, 96 Mo. 168; Verdin v. St. Louis, 131 Mo. '26; Barber Asphalt Paving Co. v. Hezel, 155 Mo. 391. (3) The opinion of the St. Louis Court of Appeals in holding that it is an actionable injury and nuisance for one to collect surface water and the water from a stream and

cast it upon an adjacent landowner to that landowner's damage, is not in conflict with any of the opinions of this court.   Paddock v. Somes, 102 Mo. 237; Rychlicki v. City of St. Louis, 98 Mo. 497; McCormick v. Railroad, 57 Mo. 438.   (4)   What the evidence was in the case decided by the Court of Appeals is to be ascertained from the court's opinion and not from an examination of the record and abstract.  State ex rel. Trust Co. v. Reynolds, 278 Mo. 706.

WOODSON, J.—This is a proceeding by *certiorari* instituted in this court against the St. Louis Court of Appeals, requesting it to send up to this court the record in the case of Mill Creek, Fredericktown & Mine La Motte Special Road District, the plaintiff, and the Missouri Pacific Railroad Company, the defendant.  It was out of that case these proceedings grew.

The rulings set forth in the opinion of the Court of Appeals are alleged to be in conflict with the last and controlling opinions of this court, but we think counsel for relator, in that respect, are mistaken, as appears by reading the opinion.

In that case, the plaintiff sought to recover damages from the defendant for the alleged negligent maintenance of a certain culvert under its roadbed, placed there by the Director-General of Railroads during Federal control of the railroad, which wrongfully caused the waters of a natural watercourse to be diverted from its natural course and channel and wrongfully caused large quantities of surface water to be collected in artificial ditches and drains, and wrongfully caused waters from said stream and ditches to be precipitated through said culvert against the roadbed of the plaintiff's highway and wash the same away, to its damage in the sum of five hundred dollars.

The trial in the circuit court resulted in a judgment for the plaintiff for four hundred dollars, which was duly appealed to the Court of Appeals, and by that court

duly affirmed. On account of that judgment these proceedings were begun in this court.

When this case was first argued and submitted to this court, I was the only member who was of the opinion that the judgment of the Court of Appeals should be quashed, but upon a full investigation of the record and authorities I changed my mind, and have concluded that the opinion of the Court of Appeals was right, and have adopted it as my opinion as the opinion of this court in this case. This course requires the presentation of the petition, answer and opinion of that court. The petition was as follows:

"Plaintiff states and avers that now and at all times herein mentioned it is and was organized and incorporated as a special road district in Madison County, Missouri, under the authority and provisions of Article VI, Chapter 102, of the Revised Statutes of Missouri of 1909, and amendment thereto, with the right and capacity to sue and be sued as such, and that the defendant is and was a railroad corporation, having a line of railroad in and through said Madison County, and a station office and agent therein, for the transaction of its usual business as a common carrier.

"The plaintiff, for its cause of action against the defendant, states and avers that at all times herein mentioned the plaintiff had and maintained a public road and highway in said Madison County, leading from Fredericktown to the eastern part of said county, and that defendant owns and maintains, as a common carrier, a right of way and line of railroad in and through said county, which, at a point about one mile east of Fredericktown, lies adjacent to and on the north side of said public road and highway of plaintiff, and parallel with it.

"Plaintiff further says that at said point the defendant maintains a high grade or dump, on which its tracks are laid, and that it has constructed and maintains artificial ditches and drains leading east and west from said point, along the north side of said dump or

grade, for the purpose of collecting a large volume of surface water, which flows down from higher areas thereabout.

"Plaintiff further states that there was, and is, a natural watercourse and stream flowing from north to south at said point over which said railroad dump or grade of defendant is constructed and maintained, and over which said public road and highway is also constructed and maintained. That, by means of a large stone culvert, which defendant, or the prior owners of its railroad, constructed, and which defendant maintains, and by means of a much larger concrete culvert, constructed and maintained by plaintiff immediately south of, in line with and adjacent to said culvert of defendant, the waters of said natural stream, as well as the surface waters collected by said artificial ditches and drains of defendant, were allowed to pass under said railroad dump and public road, in the natural channel of said stream to its junction with Saline Creek, some fifty yards south of said culverts.

"Plaintiff further states and avers that the stone culvert aforesaid, which was so constructed by defendant, or the prior owners of defendant's railroad, and which defendant continues to maintain, proved inadequate in size at times of excessive rainfall to allow said waters to pass into and through said culvert of plaintiff, under its public road and highway, and to follow the natural course and channel of said stream to said Saline Creek, all of which plaintiff avers would have been the result had defendant's said stone culvert been sufficiently large.

"That during the year 1919, while the said railroad, and the operation and maintenance thereof, were under control of the Director General of Railroads for the Government of the United States, said Director General and the defendant herein undertook to remedy the obstruction to the flow of said waters, caused by said inadequate culvert, and unmindful of their duties to plaintiff constructed, or caused to be constructed, a second and larger

culvert under said railroad dump and grade, a few feet west of said stone culvert, and east of the natural course and channel of said stream, thereby diverting said stream from its natural course and channel, and causing the waters thereof, as well as a large quantity of said surface water, which was collected in said artificial ditches along the side of said railroad, and emptied into said larger culvert, all in a concentrated stream and volume, to be cast against, upon and over the right of way and public road of plaintiff.

"That, after said railroad and the control and maintenance thereof had been relinquished by said Director General and the Government of the United States to the defendant herein, which occurred in the last days of March, 1920, the defendant continued to maintain said second and larger culvert under its said railroad dump, and continued to maintain said artificial ditches and drains for the collection of said surface water along the sides of defendant's said railroad, and, while so maintaining said culvert and ditches, as aforesaid and described, during the months of March, April and May, 1920, the defendant, by the means and in the manner aforesaid, wrongfully caused the waters of said stream to be diverted from its natural course and channel; and wrongfully caused large quantities of said surface water to be collected in said artificial ditches and drains, and wrongfully caused said waters from both said stream and said ditches to be precipitated through said second larger culvert of defendant, and cast in a concentrated volume and stream, with great force, against, upon and over the right of way and roadbed of the plaintiff, resulting in great damage and injury to the same, by washing large gullies and ditches therein and across the same, and by carrying off and washing away the materials with which said road was constructed.

"That plaintiff was greatly damaged by the wrongful acts of defendant as aforesaid and put to great expense in repairing its said right of way and public road, and in order to save said road from further and like in-

jury from such waters coming through said second culvert of defendant and upon its said property, the plaintiff was compelled to construct, and has constructed, a large and additional concrete culvert immediately south of, in line with and adjacent to the said culvert of defendant, though said waters were diverted and carried, so as to bring the opening of its said culvert under its said road in line with the opening of the defendant's said second culvert, whereby said waters may be allowed to pass through and under plaintiff's said road and property without obstruction, and without damage and injury to plaintiff's said property.

"That the construction of said additional culvert cost the plaintiff the sum of three hundred and seventy-five dollars, and that it was necessary and is necessary to the preservation of the plaintiff's said property, owing to the wrongful acts of defendant as aforesaid. That, together with the cost of the construction of said additional culvert and the repair of said right of way and public road, caused and required by the wrongful acts of defendant, as aforestated, plaintiff has been compelled to lay out and expend the sum of five hundred dollars and is damaged in that sum by reason of the wrongful acts of defendant, as aforesaid.

"Wherefore, plaintiff prays judgment against defendant for the sum of five hundred dollars, and for the costs of this suit."

The answer in said cause was a general denial.

In due course of law and time, said cause was heard in the St. Louis Court of Appeals, and the following opinion was written by respondent DAUES and concurred in by his co-respondents, ALLEN and BECKER:

"This is an action to recover certain sums of money expended by plaintiff on a public road which, it is alleged, was made necessary through defendant's action in diverting a stream of water, together with surface water, over said road. The cause was tried by the court without a jury; the court made a special finding of facts

and awarded the plaintiff damages in the sum of $400. From a judgment upon same this appeal is taken.

"The petition, a very lengthy one, alleges that the defendant railroad company diverted a natural watercourse and collected a large quantity of surface water by ditches and drains and cast such waters so collected in a concentrated body upon the road of respondent road district; that it became necessary for plaintiff, in order to protect its right of way and to repair the public road, because of the waters so diverted and thrown on and against its property, to construct an additional concrete culvert across its property; that the cost to plaintiff in constructing such additional culvert was $375: and that, together with other work done to repair the right of way, plaintiff was compelled to lay out and expend the sum of $500, for which judgment is prayed. The answer is a general denial.

"The place at which this controversy arises is near Fredericktown, in Madison County. The public road under the control of plaintiff at this point runs parallel with the line of the defendant's railroad and are adjacent to each other, both running east and west. A natural watercourse runs from the northeast to the southwest under the dump of said railroad and under the grade of the public highway. There is evidence tending to show that when the railroad was built, many years ago, a stone culvert was constructed under same to allow the waters of said stream to pass through. In 1911 the county court constructed a concrete culvert under its public highway, and at a point directly south of and in line with the stone culvert of the defendant, to allow the water of such stream to pass under the road and to flow into Saline Creek at a point which the evidence shows was about fifty yards away from the point where same was afterwards made to enter. Prior to the construction of said concrete culvert by the county court there was a wooden bridge in the road over this stream at the same point where the concrete culvert was afterwards constructed in 1911. From the calculations of R. A. An-

thony, a witness for plaintiff, 'and who at the time was one of the commissioners of the road district, it appears that the stone culvert under the railroad at the intake side of same was three feet and nine inches in width by forty-eight inches in height, giving the opening a carrying capacity of 18.18 feet; that the concrete culvert under the public highway had a carrying capacity of 26.13 feet, and that the concrete culvert under the public highway had always proved amply sufficient to take care of all the water that came under the railroad and through said stone culvert. In 1919 the defendant, or more directly, the Director General of Railroads, who had charge of the railroad property at that time, built a concrete culvert under the railroad at a point west of this rock culvert and west of the channel of the stream. A ditch or channel was excavated leading from the channel of said stream in a westerly direction into its new concrete culvert, thereby drawing off the waters from the channel of the stream into and through the new concrete culvert. This evidence was brought out by plaintiff's witness Venable.

"It is not entirely clear just what is the distance from the stone culvert to the new concrete culvert which was constructed in 1919, though, as we read the record, from center to center the culverts are approximately seven or eight feet apart. The defendant in constructing the concrete culvert also constructed wings on the south side of same, and extended the wing on the east side of said culvert south to within eight inches of the headwall of the public road culvert, and the south end of the east wing of defendant's culvert was placed about six and one-half feet west of the west side of the opening of the concrete culvert under the public highway. The defendant's new concrete culvert is eight feet wide and six feet high.

"Plaintiff's evidence tends to show that there was no opening or channel at the south end of the railroad's culvert to allow the water to get back into the natural channel of said stream, and that the east wing of the rail-

road culvert obstructed and diverted the flow of the waters from said stream, turning said waters in a south-westerly direction over and across the public highway. It was shown that in 1920, after the construction of the culvert by the railroad company, the water flowing through such new concrete culvert was thrown onto the public highway, damaging and destroying same; that the water was diverted in a southwesterly direction out of the natural course of same, and that such water was caused to be deposited in Saline Creek at a point as much as seventy-five yards west of the mouth of the stream from which same was diverted; that because of such situation, plaintiff road district was compelled to build, and did build, a new and additional concrete culvert to articulate with the railroad culvert, and necessitated the cutting of a ditch from the south end of the new concrete culvert in the highway into the natural course of the stream, making necessary the expenditure of the amount of money as alleged in the petition. ·

"Considerable testimony was introduced by the defendant which in some material respects conflicts with the evidence introduced on behalf of plaintiff. There was evidence for the defendant tending to show that the old rock culvert under the railroad was sufficient to carry the water that flowed continuously in the stream, but was not sufficient to carry the water whenever there was a heavy rainfall; that the County Court of Madison County, before the organization of the plaintiff road district, built the wooden bridge above referred to and cut ditches, entirely changing the course of the stream. Furthermore, that the defendant put the new concrete culvert under the railroad dump to take care of the water in case of heavy rainfall which otherwise would back up over an extended area; that in 1920 heavy rains fell and water passed through the old rock culvert and the new concrete culvert under the railroad, and, there not being a sufficient outlet under and through the public highway, same was washed out, and it became necessary for the road district to build a larger opening to take care of the

water flowing in times of heavy rains; that before the construction of the new culvert by the railroad the stream would overflow its banks and spread out over the adjacent territory, but that since its construction there has been no overflow on the land north of the railroad's roadbed.

"The court, sitting as a jury, tried the facts and decided that issue in favor of the plaintiff, and we think the evidence abundantly sustains such finding of the court. The court, trying the facts, found, *inter alia,* as follows:

"'That the Director General cut out the earth between the intake of said concrete culvert and where said stream formerly ran, so as to cause a diversion of the larger portion of the water of said stream from said old stone culvert in and through the new concrete culvert, and emptied said water, including the surface water collected by said ditches and drains, as aforesaid, in a concentrated flow and volume upon and against the grade and right of way of plaintiff, over an area of several feet west of where said stream flowed in its natural course and channel through said concrete culvert of plaintiff above mentioned and described. . . .

"'The court further finds that during the months of March, April and May, 1920, there were excessive rains and that by reason of the construction and maintenance of said concrete culvert under defendant's railroad at said point and by reason of the diversion of said natural stream of water, as aforesaid, the water of said stream was diverted from its natural course and channel and carried through said concrete culvert, and emptied into a concentrated flow and volume, upon and over the grade and right of way of plaintiff, causing it to be washed out and carried away; that in order for plaintiff to take care of the water caused by said diversion through said concrete culvert, and to maintain its road and right of way, it became necessary for plaintiff to construct a large culvert across its roadway, immediately south of and in line with said concrete culvert of de-

fendant; that in the repairing of its said grade and right of way of the damage done by said water during said months, and in constructing said culvert across its said road and right of way to care for said water, the plaintiff has expended the sum of $400,' etc

"We think the court correctly overruled defendant's demurrer to the evidence.

"But learned counsel for defendant insist that the petition does not state a cause of action because the petition alleges that the stone culvert under defendant's road bed was not large enough to afford a sufficient outlet to drain and carry off the water from excessive rainfall, and that, since it is alleged in the petition that the stone culvert maintained by the defendant was inadequate, it follows that under Section 9953, Revised Statutes 1919, the defendant was bound by law to enlarge such outlet to drain the water, including surface water, and that, therefore, the defendant had the right, and, indeed, was obliged by the statute, to construct this new culvert, giving it sufficient capacity to carry the water off as it was emitted by the stream, and including surface water, and that for that reason no cause of action has accrued against the defendant, and we are asked to reverse this judgment.

"While, it is true the language of the petition does state, among other things, that the stone culvert was inadequate to carry the water, and that the new concrete culvert was built by the railroad in order to take care of the surface water, the petition as a whole undoubtedly states a cause of action and very closely follows the petition in Humphrey v. Railway, 151 Mo. App. 338, 131 S. W. 715.

"It is not necessary to cite authorities that the defendant is liable for damages caused to plaintiff's land by a diversion of water thereon from a natural watercourse, and that liability attaches where the railroad collects surface water and water from a stream into an artificial course and throws same in a volume upon the land of another. [Lynch v. Railway, 180 Mo. App. 169,

168 S. W. 224; Paddock v. Somes, 102 Mo. 226, 14 S. W. 746, 10 L. R. A. 254; Weishar v. Sheridan, 168 Mo. App. 181, 153 S. W. 64.]

"Nor do we believe that Section 9953, Revised Statutes 1919, can be so construed as to relieve the railroad company from liability for damages done to property resulting from the discharge of water in a body on the land of plaintiff, and we have not overlooked the amendment of said statute in 1907, by which amendment surface water was included within its provisions.

"With our consent, appellant's counsel have added to their brief the point that the defendant is not liable to respond in damages to the plaintiff in this case because the new concrete culvert was actually constructed during the time that defendant's railroad property was in the hands of the United States Government. While no such point was made in the motion for new trial and is for the first time now raised in the brief, nevertheless we have fully considered same. The petition charges that the culvert was constructed by the Director General of Railroads. It is, however, alleged in the petition, and the proof clearly shows, and it is so found in the court's finding of facts, that the damages were done to plaintiff's property during the months of March, April and May, 1920, and at a time after the property had been turned back to the defendant railroad company on March 1, 1920. The plaintiff constructed its culvert and made the repairs to the public highway after May, 1920. The suit was brought upon the theory, and the court found the facts to be, that 'the defendant has continued to maintain said concrete culvert at said point, and has continued to divert the water of said stream from its said natural water course and channel into and through said concrete culvert and upon and over the grade and right of way of plaintiff.' And, accordingly, this point also is ruled against the appellant.

"Finding no reversible error in the record, the judgment should be, and the same hereby is, affirmed. *Allen, P. J.,* and *Becker, J.,* concur.

"*On Motion for Rehearing.*—Appellant in its motion for rehearing again strenuously insists that its construction and maintenance of the new concrete culvert was in direct compliance with Section 9953, Revised Statutes 1919. We have again considered this question, and it is again our conclusion that the defendant cannot justify its conduct in this case under the statute above mentioned. Under this statute, so far as we are here concerned, the railroad company is required to maintain suitable openings through its right of way and roadbed so as to afford sufficient outlet to drain and carry off the water, including the surface water, wherever the construction of the railroad embankment makes same necessary. That cannot be construed to be a justification for changing the course of a natural stream so as to deposit the waters against and upon the property of plaintiff. Such is not 'a draining or carrying off of the water,' as the statute requires.

"The petition charges, and there is substantial evidence tending to prove, that the defendant railroad company maintained this culvert and thereby diverted from its natural channel the water of a natural stream and turned the water of this stream, together with a lot of surface water which was collected in the ditches along the dump of the right of way, in a concentrated flow and volume upon the defendant's 'public highway.

"It is also again urged that the petition does not state a cause of action. As we have pointed out in the opinion, the petition alleges that the defendant 'during the months of March, April and May, 1920, by the means and in the manner aforesaid, wrongfully caused the waters of said stream to be diverted from its natural course and channel, and wrongfully caused large quantities of said surface water to be collected in said artificial ditches and drains, and wrongfully caused said waters from both said stream and said ditches to be precipitated through said second larger culvert of said defendant, and cast in a concentrated volume and stream, with great force, against, upon and over the right of way and road-

bed of the plaintiff, resulting in great damage and injury to the same, by washing large gullies and ditches therein and across the same, and by carrying off and washing away the materials with which said road was constructed.' The petition states a cause of action and, we think, was well supported by the evidence.

"Finally, our attention is called to the case of Wabash Ry. Co. v. Elliott, 43 Sup. Ct. Rep. 406, 67 L. Ed. 743, decided in the Supreme Court of the United States April 9, 1923, and it is insisted that under that ruling the judgment here cannot be allowed to stand against the defendant railroad company. We have examined this opinion of our highest court and find that this decision re-iterates what was held in Missouri Pacific Ry. Co. v. Ault, 256 U. S. 554, 65 L. Ed. 1087; that is, that—'the right of actions arising out of acts or omissions occurring in the course of the Federal control of a railroad should be against the Director General, and not the company owning the road.' The cause of action in the instant case arises out of the acts on the part of defendant railroad company after this corporation had again come into possession of its property by maintaining the culvert and causing the diversion of the stream and the damages at a time after the Federal Government had ceased its control over the property. Clearly, the case just decided by the Supreme Court of the United States has no bearing on the issues before us.

"With the concurrence of the other judges, the motion for rehearing is overruled."

For the reasons stated, our writ should be quashed, which is accordingly done. *Graves, J.,* concurs; *James T. Blair, P. J.,* and *Ragland, J.,* concur in result.