HOBART NIGH, RESPONDENT, v. CHICAGO, ROCK ISLAND & PACIFIC RY. CO., APPELLANT.

Kansas City Court of Appeals. November 9, 1925.

1.—Carriers—Instruction as to Negligence of Carrier in Surrounding Shipment of Cattle with Other Trains, Causing Overheating, Held Warranted by Evidence. Instruction submitting question of negligence of carrier in surrounding plaintiff's cattle with other trains of cars, causing overheating, held supported by the evidence.

2.—Same—Instruction as to Duty of Shipper of Cattle to Hold Them a Day or Two, to Make up Shrinkage Sustained in Transit, Held Justified by Evidence. Instruction submitting question whether shipper of cattle was required at destination, on account of their condition, to care for them a day or two before putting them on the market, to make up shrinkage, and whether cattle were sold as soon as their condition would permit, held warranted by evidence.

3.—Damages—Where Petition Limited Amount of Special Damages, an Instruction Not Placing Such Limit on Amount of Recovery is Erroneous.

Where petition limited amount of special damage, an instruction not placing such limit on amount of recovery is erroneous.

**4.—Instructions—Damages—Erroneous Instruction on Special Damages Held Curable by Remittitur.** In an action to recover loss on shipment of cattle from shrinkage, an instruction. which did not limit amount of recovery to amount alleged in petition, though erroneous, **held** curable by a remittitur of the difference between amount alleged and highest amount jury could have found under evidence.

**5.—Damages—Calculation of Jury as to Amount of Damages Sustained From Shrinkage of Cattle Held Supported by Evidence.** Calculation of jury as to amount of damages sustained by cattle from shrinkage **held** supported by evidence.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1047, n. 66. Carriers, 10CJ, p. 390, n. 15; p. 393, n. 53, 60. Damages, 17CJ, p. 1064, n. 1, 2; p. 1065, n. 7.

Appeal from the Circuit Court of Mercer County.—Hon. L. B. Woods, Judge.

AFFIRMED. (*conditionally*).

*Platt Hubbell* and *George H. Hubbell* for respondent.

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

ARNOLD, J.—This is an action in damages to recover loss on a shipment of forty head of cattle shipped over defendant's railroad from Spickard in Grundy County, Missouri, to the stockyards at Kansas City, Mo.

Defendant is a common carrier engaged, in part, in the operation of a line of railroad between the two points named, and doing a general freight and passenger business. Plaintiff is a farmer, stock raiser and feeder, living about five miles northwest of Spickard.

The record discloses that for some months prior to the date of shipment, plaintiff had kept and fed the cattle in question in a lot of some nine or ten acres on his farm; that they ran to salt and water at all times; that they were three-year-old steers and had been corn fed since the previous December, or longer. On the day of the shipment the cattle were driven from the farm to defendant's stock pens at Spickard, a distance of about five miles, starting about 4 a. m. and arriving about four hours later. The stock had spent the previous night in the feed lot at plaintiff's farm and were fed before starting. On the way to Spickard, some of the steers drank from water in a grader's ditch by the side of the road. There appears some conflict in the evidence as to whether this ditch was running

or stagnant water, but the testimony shows that not all of the steers drank from this water and that those which did drink did not partake excessively. They were not driven to the water tank in the feed lot before starting, but the testimony is that the water in the feed lot was accessible to them at all times. There is some testimony to the effect that on arriving at Spickard and being placed in the pens that one and perhaps two of the steers was panting, but this symptom disappeared before they were loaded in the cars for shipping.

It is shown the day was hot and sultry; that it was quite warm even in the early morning, and that the heat increased as the day wore on and even at night, there was no breeze stirring.

Plaintiff asked the station agent of defendant company if cars for his shipment had arrived and was told they had come and that one of them was "spotted" at the loading chute. Plaintiff began loading the steers at about 11:30 A. M. Two cars were used for the shipment and twenty-three head were placed in each car, a neighbor of plaintiff having shipped six head of cattle with plaintiff's, but these are not involved in this action. The cars containing the shipment were picked up by one of defendant's trains and arrived at the stockyards in Kansas City at about 4 o'clock the next morning, crossing the Kansas-Missouri State line before reaching the unloading docks in Missouri.

The train reached Trenton about one P. M. and the shipment was held there a period of five hours, when the train resumed its journey, stopping at various points on the way to pick up other cars. It is undisputed that four of the steers in question died on the way and three more died in the yards at Kansas City and that the remaining thirty-one head were not in a salable condition to be offered at the day's market on May 24th, but were cared for by plaintiff and the commissionmen to whom they were consigned and were not sold until about two P. M. on May 26th. There is evidence that between the day of arrival and the day of sale there was a decline in the market price of about 75 cents per hundred weight.

The petition alleges that the cattle became overheated and as a result seven died, one fell and became crippled and one sick and that the remaining thirty-one were in an unsalable condition on arrival. Specific negligence was charged in several respects but only two of these charges were submitted to the jury in plaintiff's instructions, to-wit: (1) that the cars furnished for the shipment were unsuitable in that they were solidly boarded from the roof down to about midway to the floor, instead of being constructed with slats over the entire space; (2) that while the shipment was standing in the yards at Trenton, a period of approximately five hours, it was negligently surrounded with other trains of cars, thus excluding the air; that while said cattle were thus confined in said cars which

were negligently covered with boards, as aforesaid, excluding the air, shutting out ventilation, suffocating and overheating said cattle, plaintiff requested defendant's employees to place the cattle on a side track where they would not be surrounded by cars and trains, and where they would receive some air, and that defendant's employees negligently failed to comply with said request.

Damages were asked for the value of the dead steers, the depreciation in value of the sick and crippled ones, and for extra shrinkage and depreciation in the market price of the thirty-one head which were held for the market and sold on the 26th of May, the total sum asked on account of these matters being $882.24. The petition also alleged damage in the sum of $200 on account of extra feed and care, but as the testimony showed no charge was made to plaintiff for this service, this item of damage was abandoned.

Defendant answered, denied the allegations of negligence and charged that any injury or damage sustained was caused by the extreme heat of the day upon which the shipment was made, an act of God, and by the negligence of plaintiff in driving the cattle from his farm to the railroad and making the shipment on that day; and that the shipment was interstate because moved across the Kansas-Missouri State line. The answer also included a general denial, after admitting defendant's corporate status and that the shipment was made on the day alleged. The reply was a general denial.

Upon the pleadings thus made the cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the amount asked, to-wit, $882.24.

At the close of plaintiff's evidence, defendant asked and the court refused a peremptory instruction in its behalf. Motions for a new trial and in arrest of judgment were ineffectual and defendant appeals.

The first assignment of error is directed against plaintiff's instruction No. 1, in that it submitted to the jury the question of the alleged negligence of defendant in surrounding plaintiff's cattle, while in the Trenton yards, with other trains of cars, because there was no evidence of negligence in this regard. In support of this position, it is argued that as specific negligence was charged and the shipment was in interstate commerce and governed by the Federal rules, it was necessary for plaintiff to show some negligence on the part of defendant in surrounding the cars containing plaintiff's cattle with other trains of cars, in order to make that question one for the consideration of the jury.

There seems to be no attempt on the part of plaintiff to refute this well-established rule, but he is content with saying there was sufficient evidence of such negligence adduced to support the instruction in this respect.

Defendant insists there was no evidence that there were other tracks available, either for the cars carrying plaintiff's cattle, or for the other trains, or that it would have been practicable in the transaction of defendant's business at Trenton on that day to have made any other disposition of the said cars and trains than was made; that there was no showing that engines were available or what placement of engines and trains was necessary in order to enable defendant to move its trains out according to their various schedules; that evidence of the bare fact of the proximity of other trains of cars is insufficient under the circumstances, and that plaintiff was required to show additional facts of the character indicated. Defendant cites the cases of Sandler v. Railroad, 267 S. W. 957, 959; Howell v. Hines, 235 S. W. 886; Bland v. Railroad, 232 S. W. 234. These cases support defendant's position, if defendant's estimate of the evidence on this point is correct.

The testimony is undisputed that the cattle were placed upon one of the tracks in defendant's yards at Trenton, with trains or cars on each side of them; that they remained in this situation for a period of two hours and at that time were found to be heated. The testimony further shows that at the end of two hours, on complaint of plaintiff, the two cars were placed on a track west of that on which they had stood following their arrival in said yards. Further, it is shown that after the cattle were placed on the track farther west, a train was put on the east of them, but that the adjacent track to the west was clear; that the tracks in the Trenton yards extend, generally, north and south and that the sun, during part of the afternoon, shone fully upon the cars containing said cattle. It is also in evidence that defendant railroad maintains a double track extending north from Trenton, a distance of five miles and a switch track extending south of the yards a distance of approximately one-half mile.

The evidence further shows, and it is undisputed, that two cars of hogs were shifted and watered during the period the cattle remained in the yards at Trenton, and while this is not the strongest evidence that there were vacant tracks and locomotives available, yet it is some evidence, and we think was sufficiently substantial to take the case to the jury on this point. [Neely v. Hines, 237 S. W. 906, 909, and cases therein cited.] We hold, therefore, that plaintiff's instruction No. 1 was not erroneous in the respect charged.

The petition charges negligence of defendant in failing to furnish suitable cars for the shipment in question and that the cars were solidly boarded from the roof half way to the floor, thus shutting off the free circulation of air from the heads of the cattle contained therein. Testimony was introduced by plaintiff to the effect that the cars thus constructed are not suitable for shipping fat cattle in

hot weather. On the other hand, defendant introduced evidence tending to show that cars so constructed are suitable for such shipping. However, defendant assigns no error with respect to this point and it requires no discussion herein.

Defendant states that in giving plaintiff's instruction No. 1, the jury were authorized to find, among other things, ''that plaintiff and his agents were required to hold said cattle and specially care for them for a day or two before putting them on the market and that plaintiff was forced to sell said cattle on a market which had declined since the arrival of said cattle in Kansas City.'' It is urged that while the cattle may not have been in a salable condition on the 24th of May, the date of their arrival at Kansas City, plaintiff was entitled to hold and care for them until they were in salable condition and hold defendant for any decline in the market that occurred between the day of their arrival at the yards and the time they became in a salable condition. The point urged is that there was no evidence that the cattle were not salable on May 25th, the intervening day between the date of their receipt at the stockyards and the 26th, the day they were sold. In other words, defendant declares there is no evidence that plaintiff was required to hold them over the 25th, or that they were not fit for sale on that date.

However, the record discloses that during the entire period from the 24th to the 26th, inclusive, the stock in question constantly received conditioning attention from the employees of the commission company and plaintiff, and that they were sold on the last-named date. This evidence is not disputed and we must conclude that the testimony offered was such that the jury reasonably could infer that the cattle were sold as soon as their condition would permit. There was no error, therefore, in the submission of this question to the jury. This ruling covers also defendant's objection that the court erred in refusing to give defendant's instruction withdrawing this element of damage from the consideration of the jury. We hold the court's ruling was proper in this respect.

It is charged instruction No. 7 was erroneous because it authorized the jury to take into consideration ''whatever loss, if any, the evidence proved the plaintiff sustained on account of unusual shrinkage . . .'' It is pointed out that the thirty-one head ''sustained an extraordinary shrinkage of thirty pounds per head'' and alleged the same to have been of the value of $62.78. The objection is that although the instruction submitted this element of damage to the jury, it did not limit the amount it might find on account thereof; nor did it limit the jury as to the amount they might award plaintiff in respect to any other element of damage, but merely advised as to the limit of their verdict for all matters submitted. It is insisted that while the question of shrinkage was thus limited

by the petition to thirty pounds per head on the thirty-one head, two of plaintiff's witnesses testified that the shrinkage was from forty to fifty pounds per head. The item of $62.78 claimed on this account was based upon the testimony of plaintiff, figuring thirty pounds each for the thirty-one head at the price the cattle brought, to-wit, $6.75 per hundred weight.

The objection is based upon the fact that there was evidence of greater damage on this account than was alleged in the petition; and that the instruction should have limited any assessment in this respect to the amount alleged in the petition. Defendant cites Finley v. United Rys. Co., 238 Mo. 6, 16, and Hance v. Rys. Co., 223 S. W. 123, 124. As in the Finley case the petition fixes the amount claimed. Defendant had a right to rely upon the admission of plaintiff that his loss in this respect had been only $62.78 as alleged in the petition, and it was the duty of the court to limit the amount of recovery to this figure. [Smoot v. Kansas City, 194 Mo. 513, 522; Heinz v. Railroad, 143 Mo. App. 38.] To limit the amount of special damage in the petition and then to instruct the jury without placing any limit thereon is error, though whether sufficiently harmful to constitute reversible error must depend upon the facts and circumstances in each case. In the case at bar it is impossible to know what part of the verdict covered such extraordinary shrinkage. Under the facts in evidence the most the jury could find plaintiff lost in this way was fifty pounds per head which at $6.75 per hundred would be $93.38. [Hance v. Rys. Co., 232 S. W. l. c. 124.] However, this error can be cured by remittitur of the difference between the two figures, viz., $30.60.

Finally, it is urged the judgment is excessive in the sum of $30, and in support of this contention defendant points out that the weight of the thirty-one head of cattle, as stated in the petition, was 32990 pounds and the amount of damages, therefore, was approximately $247.33; that the result was reached upon the evidence as to the amount the cattle brought, to-wit $6.75 per cwt., and the total amount for which they were sold, as alleged in the petition. From these facts defendant argues, as a matter of law, that under the petition and the evidence, plaintiff was not entitled to recover in excess of $247.33 on account of depreciation in the market price, and that the calculation in the petition and the evidence as $277.35 is incorrect.

We think defendant's contention in this respect untenable. The account sales furnished by the commission company and made a part of the petition shows, on its face, that the amount upon which the claim for $277.35 was based, was determined by a calculation based upon the total weight of 36980 pounds. The loss, as alleged,

was 75¢ per cwt., making a total of $227.35. We see no error in this calculation and hold against defendant on this point.

For reasons above stated, if, within ten days from the date of the filing of this opinion, plaintiff will enter a remittitur for the sum of $30.60 from the amount of the verdict, the judgment will be affirmed; otherwise it will be reversed and the cause remanded for a new trial. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.* absent.

