* Corpus Juris-Cyc References: Appeal and Error, 3CJ, p. 976, n. 27; 4CJ, p. 1141, n. 86; section 3150, p. 1145, n. 18; Damages, 17CJ, section 365, p. 1065, n. 7, 8; Railroads, 33Cyc, p. 358, n. 18; p. 373, n. 83.
This is a suit under the statute, section 9953, Revised Statutes 1919, for damages sustained to crops caused by the overflow of plaintiff's land in Grundy county, Missouri. There was a verdict in the sum of $414 in favor of plaintiff and defendant has appealed.
The facts show that plaintiff's land consisted of forty-six acres in the Grand River bottom, the land being situated about three and a half miles south of Trenton. Grand River follows a tortuous course near and around plaintiff's land. Starting from a point a fourth to a half of a mile north of plaintiff's land, it flows first in a southwesterly direction, thence due south where it passes a point about a fourth of a mile west of the land, thence to a point a short distance further south where it makes a turn to the west and abruptly back again to the east, flowing eastwardly where it passes from a fourth to a half mile south of the land. Defendant's railroad after leaving Trenton runs almost in a due southerly direction and east of a forty-acre tract, which consists of the main body of plaintiff's land, and less than one-fourth of a mile from that portion of the land. When the railroad reaches a point touching the six acres of land in question lying south of the easterly half of the main forty acres and separated from the latter by a public road running east and west, it turns in a more westerly direction and crosses Grand River where that stream bends from west to east, at a point three-fourths of a mile southwest of plaintiff's land. The tracks from a point some distance north of the land to a point on high ground, across or on the west side of the river, run upon an embankment varying from five feet at plaintiff's land to eight feet.
Prior to the building of the railroad embankment the waters on plaintiff's land were drained by a slough or depression running *Page 883 
through the main body of the land and across the railroad's right of way a short distance southwest of the six-acre tract. The slough gets wider and deeper to the point where it flows into Grand River. Prior to the construction of the railroad some of such waters drained off toward the southeast at the point where the railroad embankment now exists. Defendant now maintains a trestle over the depression made by the slough and has constructed a bridge where its road crosses the river.
In July, 1922, a flood came of not unusual proportions, causing the waters on the upper side of the railroad to rise almost to the top of the embankment and to a point four feet above the waters on the lower or east and south side of the embankment where there was very little water. The water stood on plaintiff's land several days, causing the loss of his crops. There was ample evidence tending to show that the embankment held back the water, causing plaintiff's damage The only other opening in the embankment, aside from the opening in the embankment at the bridge over the river itself (and there are some others) that is necessary for us to take notice of, is the one a short distance east of plaintiff's land where defendant erected the trestle.
Defendant insists that there is no evidence of any obstruction to the channel of the river. From a reading of the record it is difficult to tell from plaintiff's testimony whether any of the abutments of the bridge stood in the channel itself. However, there is ample testimony that the slough or depression that we have mentioned, was obstructed. There was evidence tending to show that this slough where it passes through the embankment is 150 feet in width whereas the trestle work itself was only seventy-five feet in width, and the channel was further obstructed by the presence of corn stalks and brush against the trestle work itself. Defendant insists that there was no narrowing or obstructing of the depression at this point but the record is to the contrary. Plaintiff testified that it is naturally 150 feet wide at this point but that the trestle work was only 100 feet in width while the witness Thompson testified that the opening is ninety feet and the witness Smith that it is from seventy-five to 100 feet in width.
Defendant insists that there was no evidence tending to show that the corn stalks and drift wood had lodged against the trestle work prior to this flood but argues that the presumption is that it was carried down by the waters of this flood and that defendant would not be liable for an obstruction caused in this way. The evidence is not as clear upon this point as it might be. On cross-examination of plaintiff he was asked, "Q. Is it a bridge or trestle there? A. A piling that — that's always filled with corn stalks and brush so you know about what you got." At the instance of counsel for defendant the court struck out the words in the answer "always filled with corn stalks and brush" as not being responsive to the question. On *Page 884 
redirect examination plaintiff's counsel directed the witness's attention to his testimony on cross-examination about the presence of drift, brush and trash and plaintiff then stated that this consisted of corn stalks and brush. While at no other time, outside of the cross-examination when the witness's testimony was stricken out, was there any direct testimony as to how long the condition of corn stalks and brush being at the trestle, existed, yet the matter, as we have pointed out, was again gone into upon redirect examination when the witness's attention was called to his testimony that was stricken out, and in reference to that testimony he said that the obstruction against the trestle consisted of corn stalks and brush; in other words, although the court struck the testimony out on cross-examination as not being responsive, it was in effect again brought in a proper way on redirect examination. We think the jury could infer under the circumstances that the trestle's being filled with corn stalks and brush, was not a matter that happened at this particular flood.
The disposition of these controverted questions of fact disposes of some of the questions of law raised by the defendant. The defendant insists that the court erred in not sustaining its demurrer to the evidence. Its argument on this point and the points made as to plaintiff's instructions, all of which involve the same theory advanced by the defendant, is rather involved but as we understand its contention, it is urged that it was under no obligation to leave openings other than at the river and slough, or to take care of waters flowing against its embankment that before the construction of the same passed off to the southeast and not into the slough, for the reason that there was no existing drain or watercourse with which to connect any such openings; that defendant is not liable merely because the embankment held back the flood water but only if "its tracks and works actually obstructed the stream or watercourse" or if its embankment obstructed water from flowing into an existing watercourse or drain where there was such a course or drain with which to connect; that the evidence shows that there was only one watercourse or drain with which to connect and that was the slough, and that the embankment did not obstruct the flow of water either in or to this drain or watercourse but tended to force the water into the drain and the river, and, therefore, under the case of Goll v. Railroad, 271 Mo. 655, and like cases, it is not liable. Defendant in this connection says that it was only under the duty to provide such openings as would permit the flow of water in the slough itself and it was not necessary for it to construct an opening wider than the natural banks of the slough and as high as ordinary flood waters.
There are several answers to these contentions. In the first place, as we have before stated, there was evidence that defendant materially narrowed the existing depression or slough when it built its *Page 885 
trestle and that it permitted the opening that it left to be obstructed by drift wood and corn stalks. In the second place the Goll case and similar cases cited by the defendant are wholly unlike the case at bar. In that case the embankment was across the river from the flooded land and as we said in Murphy v. Railroad, 205 Mo. App. 682, 694, "There was no watercourse into which the obstructed water would have drained had openings been made." The statute requires the defendant to construct and maintain —
". . . suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad."
The statute says that when in the construction of a railroad the drainage of water, including surface water, is obstructed, it shall construct suitable openings across and through its right of way and suitable drains and ditches along each side of the roadbed to connect with ditches, drains or watercourses so as to afford sufficient outlet to drain and carry off such waters. According to the strict letter of the statute if the construction of the railroad obstructs the drainage of water, the railroad must provide ditches to connect with existing ditches, drains or watercourses whatever the character of such watercourses.
The contention that defendant was under no duty to construct an opening to take care of any water except that which would naturally flow into the slough or depression, is not well taken. Of course, the statute is not to be construed as to inflict any unreasonable burden upon the defendant. [Carson et al. v. Schaff, 221 S.W. 825.] And although it says nothing about the result that might flow from the drainage of waters mentioned therein into an existing drain or watercourse, we apprehend that it is not to be construed to mean that the railroad shall divert large bodies of water into a slight depression which nature never intended to carry and by an opening through its embankment flood lands of proprietors on the lower side, if the doing of which might result in liability on the part of the railroad to such proprietors for the damage done. [See Carson et al. v. Schaff, supra; State ex rel. v. Allen, 306 Mo. 66.]
However, there is no evidence that had the defendant maintained an opening at the slough or depression sufficient to carry off the waters involved herein, that anything of this nature would have resulted. As the statute upon its face requires the railroad to construct ditches and drains to connect with other existing ditches, drains and watercourses and as plaintiff showed the existence of such a drain or watercourse *Page 886 
into which defendant could have diverted the water involved herein, the burden was upon defendant to show, if such be a fact, that the diverting of such water into the ditch or slough which plaintiff showed existed, would have resulted in bringing about a condition that would have made it liable to proprietors of land on the lower side of the railroad. [In re Chadbourne's Estate,114 P. 1012, 1015 (Calif.).] Even had defendant not obstructed the natural slough and drain or depression in existence, it would have been liable for the failure to construct lateral ditches along its roadbed to connect with said slough, drain or depression, or otherwise with the river if reasonably possible, so as to afford an outlet for the waters dammed up by its embankment, even though such waters had not prior to the construction of the embankment been drained off by the slough, drain or depression, in the absence of proof of the character that we have stated was the duty of defendant to adduce.
However, in another part of defendant's brief wherein defendant criticised plaintiff's instruction No. 1, it is stated to the effect that the slough and river naturally drained all of plaintiff's land and therefore that the instruction improperly submitted to the jury the question as to whether defendant should have constructed lateral ditches along the side of its roadbed. Of course, if the slough and river were natural drains for such land, then the point that defendant urges, that is, that it was not under obligation to take care of waters that did not naturally flow into the slough (and river), is wholly beside the point and therefore without merit. However, we might say that there was evidence that part of the water coming onto plaintiff's land, flowed off to the southeast prior to the construction of the embankment, which was evidence tending to show that the slough was not a natural drain for all of plaintiff's land and if this is true, an inference follows that the topography of the land was such as made it necessary to construct lateral ditches. What we have said disposes of the contentions of defendant as to plaintiff's instructions except those parts of the instructions wherein the measure of damages is submitted to the jury in general terms. A matter that we will take up later.
It is insisted that the court erred in permitting plaintiff to state his conclusion to the effect that the opening at the slough was not of sufficient width to allow the water to go through without obstructing it, and to give similar testimony in answer to questions propounded to him by his attorney. In defendant's motion for a new trial defendant's complaint as to the admission of testimony reads as follows:
"Because the court erred in admitting incompetent, irrelevant and immaterial testimony offered by the plaintiff over the objection of defendant."
On examination of the abstract we find that the testimony in this case covers 104 pages which included the evidence of fourteen witnesses, *Page 887 
yet nowhere does the motion for a new trial point out with any particularity the evidence which it now claims the court erred in admitting. Under the circumstances defendant is not in a position to raise the point. [Bartner v. Darst, 285 S.W. 449, 452.]
The petition asked for $675 for destruction of the corn, $400 for destruction of the wheat and $100 for destruction of two acres of garden truck, or $1175 in all. There was evidence that the loss to the wheat itself amounted to $500. The measure of damages was submitted generally by plaintiff's instructions. The verdict was for $414, fourteen dollars in excess of the amount claimed for the wheat alone. Defendant insists the instructions were erroneous and that the error can only be corrected by requiring a remittitur in the amount of $14. We think the point well taken. [Nigh v. Railroad, 276 S.W. 1038; Smith v. Railroad,285 S.W. 524.] If plaintiff will within ten days remit the sum of fourteen dollars, the judgment will be affirmed, otherwise it will be reversed and the cause remanded. Arnold, J., concurs;Trimble, P.J., absent.